AUGUSTINE, Judge.
The present dispute arises from plaintiff Shannon M. Rainey’s purchase of a used 1975 Chevrolet Monza from an automobile dealership which held itself out to the public as “Caruso Auto Sales”. The terms of that July 1977 transaction called upon Rai-ney to make a cash down payment of $1,283.70 and to finance the remainder of the total purchase price through Credithrift of America, according to credit arrangements made by Caruso. Plaintiff’s promissory note to Credithrift for the financial balance was secured by a chattel mortgage. As part of the transaction, Caruso and Cre-dithrift issued a joint disclosure statement, as required by the Truth in Lending Act (TILA), 15 U.S.C. § 1601, et seq.[1]
Following the sale of the automobile, plaintiff filed this suit against Johnny Caruso and Credithrift, alleging several disclosure violations under TILA and its accompanying “Regulation Z” (12 C.F.R. § 226.1 et seq.). The trial court granted plaintiff’s motion for summary judgment, and this appeal followed.
The specific issues presented by this appeal are these:
I. Whether Caruso Auto Sales sufficiently identified itself to the plaintiff, in accordance with Regulation Z.
II. Whether the defendants’ failure to include notary fees as a component of the finance charge presents a *280 violation of TILA and Regulation Z.
III. Whether the contradiction between the disclosure statement (which identifies plaintiff’s security as a “chattel mortgage”), and the mortgage contract itself (which is captioned “collateral chattel mortgage”) is remediable under TILA and Regulation Z.
Our consideration of the merits of this case is guided by the knowledge that the stated purpose of the Act and its accompanying regulations is to assure meaningful disclosure of credit terms to consumers, and thereby, to facilitate comparison shopping in the market for credit. A creditor’s noncompliance with TILA’s disclosure requirements was intended by the Act to be aggressively prosecuted by the consumer, who has, to date, receive the benefit of the federal judiciary’s rigorous scrutiny toward transactions governed by the Act. When challenged, the creditor assumes the burden to prove compliance with TILA, and even slight deviations from the disclosure requirements are remediable by the consumer.
I. Failure to Identify Creditor
Regulation Z., specifically 12 C.F.R. § 226.6(d), requires that if two or more creditors[2] make a joint disclosure, each creditor shall be clearly identified. The joint disclosure statement issued by defendants in this matter named “Caruso Auto Sales” as the “arranger of credit”. Plaintiff contends that such a disclosure violates TILA and Regulation Z because “Caruso Auto Sales” is not the true identity of any legal entity, but is merely a trade name for the partnership formed by John and Steve Caruso. We agree.
Defendant Johnny Caruso has admitted through pleadings that Caruso Auto Sales purports to be the name of the partnership formed between himself and his brother, Steve Caruso.
Under Louisiana law,
“No person shall transact any business under an assumed name or under any designation .. . unless such person files in the office of the register of conveyances in the City of New Orleans ... a certificate setting forth the name under which the business is to be conducted and the real full name of the person owning ... or transacting the business, with the post office address of such person.” La. R.S. 51:281.
With particular reference to partnerships, La.R.S. 51:283 provides:
... “This Sub-part shall not prevent the lawful use of a partnership name or designation, if the partnership name or designation includes the real name of at least one of the persons transacting the business”. (Emphasis added).
Applying the above precepts, it is clear that unless the Caruso partnership registered its assumed name, Caruso Auto Sales, the firm has failed to properly identify itself in the conduct of its business, as its partnership name does not include the real name of any person. As we stated earlier, it is Caruso who has the burden to show compliance with TILA. That burden has not been met here, for nowhere in the record do we find evidence of the partnership’s registration in accordance with Louisiana law. “Caruso Auto Sales” must therefore be regarded as the mere trade name of the Caruso firm.
In Lawrence v. Franklin Investment Co., Inc., 468 F.Supp. 499 (D.D.C.1978), it was squarely held that “a trade name may not be sued, and disclosure of the trade name alone presents a barrier to discovering the actual identity of the creditor ...” Id. at 501. See also, Vines v. Hodges, 422 F.Supp. 1292 (D.D.C.1976). The principle underlying Lawrence also holds true in Louisiana: Code of Civil Procedure Art. 736 *281 provides that a person who does business under a trade name is the proper defendant in an action to enforce an obligation created by or arising out of the doing of such business. Since, in Louisiana (as under federal law) a trade name may not be sued, it follows that Caruso’s disclosure of its trade name alone violated TILA and Regulation Z, § 226.6(d). Accordingly, the summary judgment against Caruso is hereby affirmed. However, we cannot agree with the trial court that Credithrift should share Caruso’s liability, for when multiple creditors make a joint disclosure, each is responsible only for those disclosures which are within his knowledge and the purview of his relationship with the customer. Reg. Z, § 226.6(d). But Credithrift cannot be held responsible to know whether Caruso properly registered its partnership name, and thus cannot be held to have known that “Caruso Auto Sales” was merely a trade name. That part of the trial court’s judgment finding Credithrift to be in violation of Reg. Z, § 226.6(d) is therefore reversed.
II. Notarial Fees
In furtherance of TILA’s purpose to promote the consumers’ informed use of credit, both the Act[3] and Regulation Z[4] require that the creditor disclose the “finance charge” and its component parts. Certain types of fees and charges are specifically exempted from the disclosure requirement, however. Reg. Z, § 226.4(b)(1) provides:
(b) Itemized charges excludable. If itemized and disclosed to the customer, any charges of the following types need not be included in the finance charge:
(1) Fees and charges prescribed by law which actually are or will be paid to public officials for determining the existence of or for perfecting or releasing or satisfying any security related to the credit transaction.
Plaintiff contends that the defendants’ failure to include notary fees which were assessed pursuant to her purchase of the automobile violates the above-cited regulation. She relies upon an unofficial staff interpretation of § 226.4(b)(1), issued by the Federal Reserve Board, which opined that inasmuch as notarial fees are not “prescribed by law” within the meaning of that section, they must be included in the finance charge.[5] Plaintiff seeks to clothe the *282 FRB opinion with the authority of law, and she invokes the great deference which courts must pay to administrative agencies in the interpretation of their own regulations. Plaintiff cites Ford Motor Credit Co. v. Milhollin, 444 U.S. 555, 100 S.Ct. 790, 63 L.Ed.2d 22 (1980) for the proposition that “unless demonstrably irrational, Federal Reserve Board staff opinions construing the Act (TILA) or Regulation (Z) should be dispositive...
Although we acknowledge the Mil-hollin directive to accord great deference to the staff opinions of the Federal Reserve Board, we do not find such deference to be appropriate here, for as Milhollin itself stated, unofficial interpretations have no special status comparable to that of official FRB staff interpretations. Id. at 568, n. 10, 100 S.Ct. at 798, n. 10. Clearly, the FRB opinion upon which plaintiff relies is an unofficial interpretation. Accordingly, we pay greater deference to the federal judiciary. Williams v. Bill Watson Ford, Inc., 423 F.Supp. 345 (E.D.La.1976) and George v. General Finance Corp. of Louisiana, 414 F.Supp. 33 (E.D.La.1976) squarely hold that a notary’s fee falls within the exception of § 226.4(b)(1) and need not be included in the finance charge if it is separately itemized on the disclosure statement.
Adopting the holdings of the above-cited cases, we find that the creditors’ failure to include notary fees among the “finance charges” presents no violation of the Act or of Regulation Z. The $3.00 notary fee assessed in this case, although not in-eluded among the “finance charges”, was separately itemized on the disclosure statement. Defendants have given substantial and accurate disclosure and are therefore in compliance with § 226.4(b)(1).
III. Caption of Mortgage
In transactions governed by the Act and Regulation Z, a creditor must disclose a description of any security interest held by the creditor in connection with the extension of credit. 15 U.S.C. § 1639(a)(8)[6]; 12 C.F.R. § 226.8(b)(5). The disclosure statement issued to the plaintiff in this matter identifies the type of security retained by the defendant as a “chattel mortgage.” The mortgage itself, however, is identified by its caption as a “collateral chattel mortgage”. The two forms of security thus referred to are by no means synonymous. Plaintiff urges that, inasmuch as the security actually retained by the defendant creditor is a chattel mortgage, the caption of her mortgage contract conveys “additional in- . formation” which contradicts the disclosure statement, and that such a disclosure violates Regulation Z, § 226.6(c).[7]
Defendants counter that “collateral mortgage” is a term of art which has assumed a unique meaning among Louisiana lawyers, a meaning whose peculiar nuances do not even occur to the average consumer, much less mislead or confuse him. In the mind of the average layman, appellants argue, a “collateral mortgage” is simply one which stands as security for a debt; in this case, the automobile is the “collateral”, and its *283 mortgage is a “collateral” mortgage. Appellants remind us that except for Louisiana’s penchant for this exotic breed of security — “the strange alchemy of the pledge of a mortgage”[8] — this colloquial understanding of “collateral” would be vindicated, as it is in every other State in the union, by its dictionary meaning:
“Collateral — Designating, or pert, to, an obligation or security attached to another to secure its performance; as, a collateral assurance to a deed; to give collateral securities with one’s note for a loan; hence, secured or guaranteed by additional security; as a collateral loan; a collateral note.” Webster’s New International Dictionary, 3d Ed.; unabridged. 1934. (Emphasis his).
Were it not for the relentlessly strict interpretation accorded TILA and Regulation Z by their chief interpreters, the federal courts, we would be moved by appellants’ argument, which we consider to have some merit. But it has been repeatedly held that it is not necessary that the consumer actually have been deceived in order to find a violation. Zamarippa v. Cy’s Car Sales, Inc. 674 F.2d 877, 879 (11th Cir.1982); Smith v. Chapman, 614 F.2d 968, 971 (5th Cir.1980). Indeed, to find a violation of Regulation Z, we need not hold that the “additional information” contained in the caption is misleading or confusing to the average consumer. It is sufficient that the “additional information ... be stated ... so as to ... contradict ... the information required by this part to be disclosed.” § 226.6(c). (Emphasis added).
There can be no question that the defendants’ disclosure form, which identifies their security as a chattel mortgage, is contradicted by the caption of the mortgage which identifies it as a “collateral chattel mortgage” — under Louisiana law, they are simply not the same.
The only remaining question is whether such an innocuous error is remediable under the Act. The great majority of federal cases concerning the standard of scrutiny to be applied in assessing violations of TILA mandate strict compliance with the technical requirements of the Act. Smith v. Chapman, supra, at 971; Williams v. Western Pacific Financial Corp., 643 F.2d 331, 339 (5th Cir.1981). Even minor statutory and regulatory strictures must be followed in detail. Charles v. Krauss Co., Ltd., 572 F.2d 544 (5th Cir.1978), and “once the court finds a violation, no matter how technical, it has no discretion with respect to the imposition of liability”. Grant v. Imperial Motors, 539 F.2d 506, 510 (5th Cir.1976); Charles v. Krauss, supra, at 546. Shroder v. Suburban Coastal Corp., 550 F.Supp. 377 (S.D.Fla.1982). (Emphasis added).
Applying the foregoing standards, we find that the contradiction between the caption of the mortgage and the disclosure statement is sufficient to trigger a violation of § 226.6(e). See Gennuso v. Commercial Bank and Trust Co., 566 F.2d 437 (3rd Cir.1977); Ives v. W.T. Grant, Co., 522 F.2d 749 (2d Cir.1975). Accordingly, summary judgment as to each defendant is affirmed and the case is remanded for determination of damages.
AFFIRMED and REMANDED.

. In 1980, TILA was amended by “TILSA”, the Truth in Lending Simplification Act. The facts of this case arose prior to the effective date of the amending legislation.

. 15 U.S.C. § 1602 defines “creditor” to include “a person who regularly arranges for the extension of consumer credit, which is payable in more than four installments or for which the payment of a finance charge is or may be required, from persons who are not creditors. ..”.

. 15 U.S.C. § 1638.

. Reg. Z„ § 226.8(b) and (c).

. FRB Letter of March 18, 1977, No. 1166; Consumer Credit Guide No. 31,559. The reported text of the letter reads as follows:
“This is in reply to your letter * * * requesting several official staff interpretations on various subjects. Most of your questions have been addressed in such an interpretation contained in a separate letter to you. This letter is an unofficial letter dealing with the question you raised about the proper treatment of notary fees.
You have asked whether fees paid to notaries in Louisiana are required to be disclosed as components of the finance charge under § 226.8(d)(3) of Regulation Z. In Louisiana both real estate and chattel mortgages must be acknowledged before a notary public. You state that notaries are considered ‘public officials’ in connection with this perfection of security interests but that the amount of the fee charged is not prescribed by law. As you have noted, notary fees in connection with real estate transactions are excluded from the finance charge by virtue of § 226.4(e)(4). Although there is no comparable specific mention of notary fees with regard to personal property transactions, you ask whether these fees are excludable from the finance charge by virtue of § 226.4(b)(1). Section 226.4(b)(1) provides that ‘[f]ees and charges prescribed by law which actually are or will be paid to public officials ... for perfecting ... any security related to the credit transaction’ are excludable from the finance charge. You argue that since State law requires a notary to acknowledge the chattel mortgage and since notaries are public officials under State law, notary fees therefore come within this provision.
Staff does not agree with your analysis of this provision. It is staff’s opinion that the term ‘fees and charges prescribed by law’ requires that law set the specific amount of the fees and charges. Support for our view that the words ‘prescribed by law’ in § 226.4(b)(1) refer to the amount of the fee appears from an examination of § 226.4(b)(2). This latter paragraph, which excludes from the finance charge so-called ‘non-filing insurance’ premiums not in excess of the fees and charges described in paragraph (b)(1), clearly uses as its measure the amount of the fees referred to in paragraph (b)(1).
*282 Since, in staffs opinion, these notary fees are not prescribed by law, as contemplated by the regulation; they must be included in the finance charge and itemized under § 226.8(d)(3), except as provided in § 226.4(4).
This is an unofficial staff interpretation of Regulation Z. I trust it is responsive to your inquiry.”

. Prior to its repeal by Pub.L. 96-221, effective upon the expiration of two years & six months after March 31, 1980, 15 U.S.C. § 1639(a)(8) read as follows:
(a) “Any creditor making a consumer loan or otherwise extending consumer credit in a transaction which is neither a consumer credit sale or under an open end consumer credit plan shall disclose each of the following items, to the extent applicable: ...
(8) A description of any security interest held or to be retained or required by the creditor in connection with the extension of credit, and a clear identification of the property to which the security interest relates.”

. § 226.6(c) provides in pertinent part:
“Additional information. At the creditor’s or lessor’s option, additional information or explanations may be supplied with any disclosure required by this part, but none shall be stated, utilized, or placed so as to mislead or confuse the customer or lessee or contradict, obscure, or detract attention from the information required by this part to be disclosed.”

. Prof. Harry Sachse, Report to the Louisiana Law Institute on Article Nine of the Uniform Commercial Code, 41 Tul.L.Rev. 785, 799 (1967), cited in Nathan & Marshall, The Collateral Mortgage, 33 La.L.Rev. 497 (1973).