**In re Jeneva V. PINDER, Debtor.**

**Jeneva V. PINDER, Plaintiff,**

**v.**

**The LOMAS & NETTLETON COMPANY, Defendant.**

**Bankruptcy No. 87–00477S.**
**Adv. No. 87–0694S.**

United States Bankruptcy Court,
E.D. Pennsylvania.

March 24, 1988.

---

Steven P. Hershey, Community Legal Services, Inc., Philadelphia, Pa., for debtor/plaintiff.

David B. Comroe, Philadelphia, Pa., for defendant.

Edward Sparkman, Philadelphia, Pa., Standing Chapter 13 Trustee.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

### A. INTRODUCTION

The Debtor/Plaintiff in the present Adversary proceeding seeks recoupment against a Proof of Claim of Lomas & Nettleton Company (hereinafter referred to as "the Defendant") in the nature of statutory damages for violations of the federal Truth-in-Lending Act, 15 U.S.C. § 1601 et seq. (hereinafter referred to as "TILA"). The Debtor alleges that she was not provided with disclosures required by TILA in connection with a residential mortgage. The original mortgagee and payee was the Secretary of Housing and Urban Development (hereinafter referred to as "HUD"). The mortgage was subsequently assigned to the Defendant herein. The Defendant maintains that it cannot be held liable for statutory damages since it is an assignee of a governmental agency which is exempt from civil liability under TILA. 15 U.S.C. § 1612(b).

The primary legal issue to be determined in this matter is whether a non-governmental assignee of an obligation can be liable for statutory damages under TILA when the Debtor could not recover against the original governmental assignor. Assuming that the assignee may be liable for such damages, there remains the factual issue of whether the Debtor did or did not receive the required disclosures in connection with her HUD mortgage. We hold here that the limitation of liability afforded to governmental agencies by § 1612(b) does not afford similar protection to subsequent non-governmental assignees. In addition, we find that the Debtor has established a violation of TILA, since her sworn testimony that she did not receive a TILA disclosure was uncontroverted by any evidence submitted by the Defendant.

### B. PROCEDURAL HISTORY

The Debtor filed her Chapter 13 bankruptcy petition on February 2, 1987. On July 7, 1987, the Debtor filed a Proof of Claim on behalf of Lomas & Nettleton in the amount of $9,016.37.[1] On July 22, 1987, Debtor filed an Adversary Complaint seeking recoupment against this Proof of Claim plus attorney's fees for alleged violations of TILA in connection with the Debtor's mortgage. On September 23, 1987, an Order was entered confirming the Debtor's Plan. On November 5, 1987, the Defendant presented for filing an "Amended Proof of Claim." See page 2 n. 1 supra. However, the validity of this Amended Proof of Claim is questionable, since it was not timely filed and was, in fact, filed after an Order was entered confirming Debtor's Plan. See Bankruptcy Rule (hereinafter referred to as "B.Rule") 3002(c).

The Debtor alleged in paragraph 16 of her Adversary Complaint that a TILA disclosure statement had been issued to her in connection with her mortgage as required by the Act.[2] In paragraph 17, she alleged that the Defendant had violated the TILA and Regulations promulgated thereunder (Regulation Z, 12 C.F.R. § 226.1, et seq.) in connection with these disclosures. The Defendant denied the allegations of paragraph 16 stating that "... Defendant herein has no knowledge of or information to admit or deny this claim. Defendant is making a diligent effort to ascertain the facts." See Creditor's Answer to Debtor's Complaint. The Defendant maintained, through its Answer, that it could not be subject to liability as an assignee of HUD, the original mortgagee. The Debtor subse-

---

1. The Defendant claims, in its Answer to Debtor's Complaint, to have submitted a Proof of Claim in April, 1987. However, this Proof of Claim was never docketed with the Court.

2. A second count based on Pennsylvania's Act 6, 41 P.S. § 403, was settled between the parties prior to a hearing in this matter.

quently filed a Motion for leave to amend her Complaint which was granted by Order entered January 14, 1988. The Debtor's Amended Complaint states, at paragraph 16, that no disclosure statement had issued in connection with the transaction.

A hearing was held in this matter on December 8, 1987. The only witness to testify at that time was the Debtor. She testified that she obtained a mortgage with HUD in 1980 to finance the re-purchase of her home. The Debtor testified that she recalled her closing in 1980 and that she did not receive a TILA disclosure at that time.

Debtor testified that she received a "stack of papers" at her closing in 1980. While she did not remember the names of all of the papers that she had received, the Debtor testified that she has retained these papers in a safety deposit box since her closing. She further testified that, at the request of her attorney, she has searched through her papers and has failed to find a TILA disclosure statement. According to the Debtor, she also delivered all of these papers to her attorney who also found no disclosure statement among them.

The Debtor indicated that she understood a TILA disclosure statement to be a "finance paper" which states the amount of the mortgage, the mortgage payments, and the amount of interest being paid in connection with the mortgage. According to the Debtor, her attorney had described the TILA disclosure statement to her when she searched her papers. The Debtor testified that she had received a TILA disclosure statement from First Pennsylvania Bank when she originally purchased her house in September, 1968.[3] She further testified that she did not receive a settlement sheet at the 1980 closing.

Counsel for the Defendant, while presenting no witnesses or documentary evidence, indicated that his client and HUD had searched for but were unable to locate a disclosure statement. He further indicated that his client did not know if a

disclosure statement was given or not. Rather, the Defendant maintained that it could not be subject to civil liability as assignee of a federal agency and that it was irrelevant whether such disclosures were in fact given.

## C. FINDINGS OF FACT

1. On December 5, 1980, the Debtor entered into a mortgage with HUD to finance the repurchase of her home.

2. HUD is a "department or agency of the United States."

3. The Debtor's mortgage was assigned to the Defendant, a private non-governmental company, on October 9, 1985.

4. The Debtor has searched the papers that she received in connection with her HUD mortgage and has failed to locate a TILA disclosure statement.

5. The Debtor testified that a TILA disclosure statement was a "finance paper" which stated the amount of the mortgage, the mortgage payments, and the amount of interest charged in connection with her mortgage. She further testified that her attorney had described a TILA disclosure statement to her.

6. The Debtor's testimony indicated significant uncertainty regarding the nature of a TILA disclosure.

7. The Defendant failed to produce any TILA disclosure or any other evidence indicating that such disclosures were made.

8. The Debtor's testimony was credible, but leaves some uncertainty as to whether she received the disclosure statement.

9. Since the Defendant produced no evidence that the Debtor received a TILA disclosure statement, to offset the Debtor's inconclusive but definite statements that she did not receive such a statement, we find that no such statement was in fact received by the Debtor.

---

3. It is interesting to note that, while the TILA was enacted in May, 1968, the Act's disclosure requirements were not effective until July 1, 1969. 15 U.S.C. § 1601, 1631, 1638; 82 Stat. 146, Pub.L. No. 90–321, §§ 504(a) and 504(b).

Thus, it is unlikely that the Debtor would have received such a disclosure statement in 1968. Her testimony to the contrary indicates that she does not clearly understand what a TILA disclosure statement is.

**908**

## D. CONCLUSIONS OF LAW

1. § 1612(a) of TILA does not exempt governmental agencies from providing TILA disclosures.

2. The limitations of liability afforded to governmental agencies by TILA § 1612(b) do not apply to subsequent non-governmental assignees.

3. The Defendant, as a non-governmental assignee, may be subject to TILA penalties which would not be available against HUD.

4. The Defendant had a burden of producing some evidence that a TILA disclosure statement was provided to the Debtor to rebut the testimony of the Debtor that she did not receive such a statement, which burden it failed to meet.

## E. DISCUSSION

### I. *§ 1612(a) of TILA Does Not Exempt Governmental Agencies From Providing TILA Disclosures*

The TILA was enacted to promote the informed use of credit by consumers through disclosure of the terms and cost of credit. *See* 1968 U.S.CODE CONG. AND ADMIN.NEWS 1962–2030; *Mourning v. Family Publications Service, Inc.,* 411 U.S. 356, 363–369, 93 S.Ct. 1652, 1657–1661, 36 L.Ed.2d 318 (1973); *Werts v. Federal Nat'l Mortgage Ass'n,* 48 B.R. 980, 982 (E.D.Pa.1985); and *In re Russell,* 72 B.R. 855, 861–62 (Bankr.E.D.Pa.1987). The stated purpose of the legislation is to "... assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. § 1601(a). To effectuate this goal, the Act and federal regulations promulgated thereunder (Regulation Z) require certain disclosures to be made clearly and conspicuously in a written form that the consumer may keep. 15 U.S.C. §§ 1631, 1632; 12 C.F.R. § 226.17(a)(1).

At issue in this matter is Section 113 of the Act, as amended, 15 U.S.C. § 1612(b), which provides that

.    .    .    .    .

(b) No civil or criminal penalty provided under this subchapter for any violation therof may be imposed upon the United States or any department or agency thereof, or upon any State or political subdivision therof, or any agency of any State or political subdivision.

It is clear that if HUD had retained the mortgage in this case, that Plaintiff would be unable to obtain statutory money damages against HUD for its failure to provide disclosures required by the Act. *See In re Caster,* 77 B.R. 8, 14 (Bankr.E.D.Pa.1987). The Defendant argues that, since money damages could not be obtained against HUD, they cannot be obtained against it either as a subsequent assignee of HUD.

We must initially consider the nature of the § 1612(b) exemption provided to governmental agencies. In our view, § 1612(b) does not exempt a federal agency from *complying* with the disclosure requirements of the Act. Rather, § 1612(b) limits the penalties or remedies that may be available against a federal agency for violations of the Act. We come to this conclusion for a number of reasons.

Under the TILA, a creditor is required to provide the requisite disclosures to the person obligated in a consumer credit transaction. 15 U.S.C. § 1631(a). The term "creditor" is defined in the Act at 15 U.S.C. § 1602(f), as one who both ...

(1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required; and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness or, if there is no evidence of indebtedness, by agreement.

Governmental agencies are nowhere exempted from the statute's disclosure requirements. Thus, when a governmental

agency otherwise meets the definition of creditor, it is subject to the Act's disclosure requirements. 15 U.S.C. § 1602(f), 12 C.F.R. § 226.2(a)(17); and R. CLONTZ, TRUTH–IN–LENDING MANUAL, ¶ 11.07, at 11–40.

In addition, § 1612(a) specifically provides that

> (a) *Any* department or *agency of the United States which* administers a credit program in which it *extends,* insures, or guarantees *consumer credit* and in which it provides instruments to a creditor which contain any disclosures required by this subchapter shall, prior to the issuance or continued use of such instruments, consult with the Board to assure that such instruments comply with this subchapter (emphasis added).

If a federal agency which extends consumer credit were not required to make TILA disclosures, there would be no need for it to consult with the Federal Reserve Board to ensure that the forms used by such agency comply with the Act. *See* R. CLONTZ, *supra,* at 11–41.[4]

While § 1612(b) insulates government agencies from "civil or criminal penalties," it does not bar all enforcement proceedings which may be brought against such agencies. Violations may be administratively enforced by the Federal Trade Commission (hereinafter referred to as "the FTC") pursuant to 15 U.S.C. § 1607. Section 1607(e)(1) provides that the FTC may require a creditor to make corrective adjustments to consumers' accounts where the annual percentage rate or finance charge was inaccurately disclosed. Governmental bodies were not excluded from these so-called "restitution requirements." R. CLONTZ, *supra,* at 11–40.

In addition, federal governmental agencies may be subject to consumer rescission under section 125 of TILA 15 U.S.C. § 1635(a). R. CLONTZ, *supra,* at 11–40. While transactions with state agencies are exempted from rescission, no similar ex-

emption is found for federal agencies. 15 U.S.C. § 1635(e)(1)(C). In point is *Ivey v. United States Dep't of Housing & Urban Development,* 428 F.Supp. 1337 (N.D.Ga. 1977), which involved a debtor seeking rescission directly against HUD. The Court there held that the debtor was not entitled to rescission where a mistake in the required disclosure was not "material" under § 1635(a) of the Act. *Id.* at 1343. Nowhere does the Court discuss, and apparently HUD did not raise, a possible defense under § 1612(b).

Finally, enforcement of TILA obligations may be sought against governmental agencies in an action for declaratory relief. In an unpublished opinion, the Ninth Circuit Court of Appeals found that plaintiff-debtors had alleged sufficient facts which "if taken as true, seem to entitle them to declaratory relief and rescission of security interests created in their land" against a state housing agency. *Druck v. Alaska State Housing Authority,* (9th Cir.1977) [556 F.2d 587 (table)].

It is significant to note that § 1612(b) limits *penalties* that may be imposed against governmental agencies but does not *exempt* transactions involving governmental agencies from the requirements of TILA. Transactions *exempted* from the Act are clearly set forth at 15 U.S.C. § 1603. Included in the exemptions of § 1603 are ". . . [c]redit transactions involving *extensions of credit* primarily for business, commercial, or agricultural purposes, or *to* government or governmental agencies or instrumentalities . . ." (emphasis added). 15 U.S.C. § 1603(1). Thus, while Congress chose to exempt transactions involving extensions of credit *to* governmental agencies, it did not similarly exempt transactions where the governmental agency was acting as creditor. *Compare* 15 U.S.C. § 1603(6) (certain federal student loans specifically exempted).

Exceptions to the TILA not specifically set forth in the statute ". . . should not

---

**4.** *See* also Official Staff Commentary of the Federal Reserve Board to Regulation Z, 12 C.F.R. Part 226, Supp. I, ¶¶ App. H–17 through H–20, where the Board approves specific forms issued by the Department of Health and Human Services for use in connection with Health Education Assistance Loans.

lightly be read into it" and existing exceptions should not be expanded beyond their terms. *Thomas v. Myers–Dickson Furniture Co.*, 479 F.2d 740, 745 (5th Cir.1973). In *Thomas*, the court rejected the Creditor's argument that pre-existing open-end credit accounts were excused from complying with the disclosure requirements of Regulation Z. *Id.* at 744–745. In *Druck, supra*, the Ninth Circuit found that an exemption for residential mortgages did not bar plaintiff's rescission of the security interest in their land. Slip op. at 2. Our District Court has held that the limitations of § 1612(b) do not extend to the Federal National Mortgage Association. *Werts v. Federal Nat. Mortg. Ass'n*, 48 B.R. 980 (E.D.Pa.1985). *But compare Federal Deposit Ins. Corp. v. Webb*, 464 F.Supp. 520, 525 (E.D.Tenn.1978) (FDIC is a federal agency exempt from liability under § 1612(b)). It has also been held that the exemption of § 1603(6) applicable to certain federal student loans does not apply to a promissory note executed in connection with a federal student loan. *Manley v. Wichita Business College*, 237 Kan. 427, 701 P.2d 893, 902 (1985).

Thus, it can be seen that the limitations contained in section 1612(b) do not exempt federal agencies from providing the required disclosures when they stand in the shoes of a "creditor" under the Act. Rather, section 1612(b) acts to prevent aggrieved debtors from obtaining certain types of remedies or penalties against such governmental creditors. As a result, the TILA disclosures should have been given to the Defendant by HUD when she obtained her mortgage. Had these disclosures been properly given, the Defendant herein would face no liability. However, if such disclosures were not given, the Defendant, as a subsequent assignee, may face liability under section 131 of the TILA, 15 U.S.C. § 1641.

II. *A Non–Governmental Assignee May Be Subject To Penalties Not Available Against a Governmental Agency*

■ The bar against civil penalties found in § 1612(b) is limited by its terms to "... the United States or any department or agency thereof, or upon any state or political subdivision thereof, or any agency of any state or political subdivision." No safe harbor is provided for non-governmental assignees of governmental agencies. The TILA contains numerous exemptions and limitations of liability. If Congress had meant to limit the potential liability of assignees of governmental agencies, it could quite easily have done so. It did not do so and this Court will not extend the protection of § 1612(b) beyond the clear language of the statute to provide such a limitation for the Defendant here.

The Defendant argues that, as an assignee of HUD, it cannot be subject to penalties that would be unavailable against HUD due to the operation of § 1612(b). Defendant argues that the rights acquired by an assignee can neither be greater than nor inferior to the rights of the assignor. Memorandum of Law of Lomas & Nettleton Company at 3. However, a close review of the cases cited by the Defendant reveals that they deal with the ability of an assignee to enforce *rights* which were available to the assignor and *not* with the liability of the assignee vis-a-vis the other contracting party. *E.g., Gardner v. Surnamer*, 608 F.Supp. 1385, 1390 (E.D.Pa. 1985) (cause of action under § 10(b) of the Securities Exchange Act can be assigned); *Hunter–Wilson Distilling Co. v. Foust Distilling Co.*, 84 F.Supp. 996, 1003 (M.D. Pa.1949) *aff'd in part and rev'd in part*, 181 F.2d 543, 545 (3d Cir.1950) (assignee can enforce warranty of original assignor); *Marsh v. Bowen*, 335 Pa. 314, 317, 6 A.2d 783, 785, (1939) (assignee of deficiency judgment could enforce judgment to same extent as assignor); *Etter v. Industrial Valley Bank & Trust Co.*, 356 Pa.Super. 502, 515 A.2d 6 (1986), *appeal denied*, 514 Pa. 647, 524 A.2d 494 (1987) (surety who pays loan assumes original creditor's position as senior lien holder); and *U.S. Steel Homes Credit v. South Shore Development*, 277 Pa.Super. 308, 314, 419 A.2d 785, 789 (1980) (purchaser of property who pays existing mortgage covering property obtains, as subrogee, all the rights and reme-

dies available to original mortgagee in connection with mortgage). The Defendant's cases thus stand generally for the general proposition that any assignee's rights of enforcement are no greater nor lesser than the rights of its assignor.

In the present case, however, we are called upon to determine not the rights but the liabilities of the Defendant as assignee. There is no question that the Defendant can enforce HUD's rights under the mortgage against the Debtor. Rather, we must determine the Defendant's *liability* as assignee of HUD, to the other signatory of the contract (for TILA violations).

The common law relating to the rights and liabilities of assignees has been substantially modified by modern statutes. *See Webb, supra.* Thus, 13 Pa.C.S.A. § 9318(a)(2) of the Uniform Commercial Code provides that an assignee is subject to any claim or defense that the account debtor has against the assignor which accrues before the account debtor receives notification of the assignment. *Commercial Trading Co. v. Milsan Mills, Inc.,* 327 Pa. Super. 407, 412, 476 A.2d 16, 19 (1984). In addition, a Federal Trade Commission Trade Regulation Rule requires purchase money loans to contain a provision indicating that "... [a]ny holder of this consumer credit contract is subject to all claims and defenses which the debtor could assert against the seller of goods or services obtained with the proceeds hereof." 16 C.F.R. § 433.2(b).

The TILA itself may limit the liability of an assignee. In *Webb, supra,* the assignee, FDIC, was in a position to avoid TILA liability due to the operation of § 1612(b). In *Webb,* the FDIC was seeking to enforce a note that it had purchased from an insolvent bank. *Id.* at 523. While the Debtor may have been able to obtain some relief for TILA violations against the original lender, he was barred from obtaining relief against FDIC, a federal agency, by operation of TILA § 1612(b). *Id.* at 525. *See also Caster, supra* (§ 1612(b) prevents recovery against HUD as assignee).

Section 1641 of the TILA defines the liability of assignees under TILA. *Price v.*

*Franklin Investment Co., Inc.,* 574 F.2d 594, 602 (D.C.Cir.1978). It provides, in pertinent part, that

.   .   .   .   .

(a) *Except as otherwise specifically provided in this subchapter, any civil action for a violation of this subchapter or proceedings under section 1607 of this title which may be brought against a creditor may be maintained against any assignee* of such creditor only if the violation for which such action or proceeding is brought is apparent on the face of the disclosure statement, except where the assignment was involuntary. For the purpose of this section, a violation apparent on the face of the disclosure statement includes, but is not limited to (1) a disclosure which can be determined to be incomplete or inaccurate from the face of the disclosure statement or other documents assigned, or (2) a disclosure which does not use the terms required to be used by this subchapter (emphasis added).

No exception from liability is specifically provided for assignees of governmental agencies. As a result, the Defendant may be held liable for the assignor's failure to provide the required TILA disclosures. As discussed previously, HUD, as a creditor under TILA, was obligated to provide the required disclosures. While statutory damages would be unavailable as a remedy due to § 1612(b), an aggrieved debtor may nevertheless maintain an "action ... or proceeding under section 1607 [relating to administrative enforcement]" against HUD. In addition, a "civil action for violation of ..." TILA could be maintained against HUD where the remedy sought is rescission or declaratory relief. *Druck, supra; Ivey, supra.* Thus, since a "civil action" or "administrative proceeding" may be brought against HUD for violations of TILA, then a "civil action for a violation" may be maintained against the Defendant as HUD's assignee. 15 U.S.C. § 1641(a).

The Defendant urges a narrower reading of § 1641(a). It argues that under § 1641(a) an assignee may not be subject to penalties which could not be obtained

against the assignor. However, the statute does not provide that an aggrieved debtor may not obtain a remedy against an assignee that would not be available in an action against the assignor. The Defendant's reading of § 1641(a) would broaden the scope of § 1612(b) to prohibit the imposition of civil penalties against assignees of governmental agencies. This Court will not adopt a reading of § 1641(a) that would create an exemption from liability not found in the TILA.

Congress has provided for limited liability for assignees. Thus, an assignee is only liable for TILA violations which are "... apparent on the face of the disclosure statement." 15 U.S.C. § 1641(a). *Cox v. First Nat'l Bank of Cincinnati,* 751 F.2d 815, 825 (6th Cir.1985). If Congress wished to further limit the penalties that may be obtained against an assignee, it could have done so. Absent a specific exemption from liability, the Defendant may be subject to civil penalties which could not be assessed against HUD for a violation of TILA. Obviously, a failure to provide *any* of the required TILA disclosures would be considered a violation "apparent on the face of the disclosure statement." 15 U.S.C. § 1641(a).

### III. *Defendant Has the Burden of Producing Some Evidence to Rebut the Testimony of the Debtor That the TILA Disclosure Statement Was Not Given to Her*

The only testimony presented at the hearing in this proceeding was that of the Debtor. The Debtor denied receiving a TILA statement in connection with the HUD mortgage. Her testimony was based on her recollection of the events at closing as well as her and her attorney's review of the closing documents which she retained. It appeared from the Debtor's testimony that she did not clearly understand what a TILA statement was or the nature of each document in the "stack of papers" provided to her at the time of the settlement. She did, however, testify that it was her understanding that a disclosure statement stated the amount of the mortgage, the mortgage payments, and the amount of interest charged in connection with the mortgage. This testimony indicated that the Debtor had some understanding of the information contained in a TILA disclosure statement.

The Defendant, on the other hand, claimed not to know if a disclosure statement was given or not. Not only did it fail to produce a disclosure statement, it produced no evidence, testimonial or otherwise, to indicate that a disclosure statement was given to the Debtor.

While the Debtor did testify directly that she did not receive a TILA disclosure statement, her testimony was not wholly persuasive due in large part to her lack of complete understanding of what a disclosure statement is. Thus, we must address the issue of the relative burdens of proof of the parties in determining whether a disclosure statement was or was not given. It is an issue we were not required to decide in *In re Johnson–Allen,* 67 B.R. 968, 970 (Bankr.E.D.Pa.1986), since this same creditor ultimately produced a TILA disclosure statement that it originally indicated had been purged. *See also In re Martin,* 72 B.R. 126 (Bankr.E.D.Pa.1987). (Court did not need to decide issue of whether legible disclosure statement was provided to Debtor where TILA violations were found in the legible portion of disclosure statement produced). This is not an issue in most TILA cases since a disclosure statement is usually produced by one party or the other.

Contrary to the suggestion of Defendant's counsel, we cannot infer that a TILA disclosure statement was given to the Plaintiff from the allegations contained in the original Complaint. First, allegations in the pleadings are not evidence before this Court. *Cf. In re Aughenbaugh,* 125 F.2d 887, 890 (3d Cir.1942) (court may not take judicial notice of papers on file in bankruptcy administration proceeding which have not been admitted into evidence and which relate to disputed facts). In addition, the Debtor's Complaint was amended and the allegations of the Amended Complaint are the relevant allegations. B.Rule 7015.

The Defendant suggests that the Debtor amended her Complaint because she "...

suddenly changed her recollection of events ..." when the Defendant admitted that it was unable to locate the TILA statement. However, it is equally as likely that the Debtor's counsel submitted a "standard" TILA Complaint in this matter alleging the existence of a TILA disclosure statement which violated TILA, assuming that one would be produced through discovery. In addition, the allegations of the original Complaint may be the result of a typographical error, e.g., an omitted "no" in paragraph 16. While neither possibility indicates careful pleading on the part of the Debtor's counsel, we will not infer adverse facts from this change in pleading.

■ It is generally held that a lender bears the burden of proving compliance with the requirements of the TILA. *Wright v. Tower Loan of Mississippi, Inc.*, 679 F.2d 436, 444 (5th Cir.1982); *Super Chief Credit Union v. Gilchrist*, 232 Kan. 40, 653 P.2d 117, 122 (1982); and *Rainey v. Credithrift of America # 5, Inc.*, 441 So.2d 278, 280 (La.App.1983). Where the creditor has produced an acknowledged copy of a TILA disclosure statement, the burden is on the consumer to prove non-receipt. 15 U.S.C. § 1635(c);[5] *Fort v. First Citizens Bank & Trust Co.*, 526 F.Supp. 22, 29 (M.D.N.C.1981); and *McCarrick v. Polonia Federal Savings and Loan Ass'n*, 502 F.Supp. 654, 657 (E.D.Pa.1980). However, the unrebutted testimony of a debtor may be sufficient to support a finding that the required TILA disclosures were not given, even where a disclosure statement is produced. *In re Underwood*, 66 B.R. 656, 662 (Bankr.W.D.Va.1986).

While the testimony of the Debtor in this proceeding was not totally convincing, it was sufficient to place upon the Defendant the burden of producing *some* positive evidence (testimonial or documentary) to indicate that TILA disclosures were given. The testimony of the Debtor in the matter appeared uncertain due to her lack of sophistication in financing transactions. Be-

tween the average consumer and the creditor, we believe that the creditor is in a superior position to recognize the significance of and retain the TILA disclosure statement. Federal Reserve Board Letter No. 538, cited in Plaintiff's Memorandum, supports this principle, in that it directs banks to take appropriate measures to ensure that they do not purchase collateral paper where the consumer has not been provided with TILA disclosures.

■ The TILA is to be construed liberally in favor of the consumer and strictly enforced to protect consumers. *Sellers v. Wollman*, 510 F.2d 119, 122 (5th Cir.1975); *Allen v. Beneficial Finance Co.*, 393 F.Supp. 1382, 1384 (N.D.Ind.1975), *aff'd*, 531 F.2d 797 (7th Cir.), *cert. denied*, 429 U.S. 885, 97 S.Ct. 237, 50 L.Ed.2d 166 (1976); *Johnson–Allen, supra*, 67 B.R. at 972; and *Underwood, supra*, 66 B.R. at 660. This purpose would not be furthered if a creditor were permitted to avoid liability without producing any proof of disclosure where the debtor has, through her sworn testimony, denied receipt of the required disclosures.

■ In *Caster, supra*, we considered a similar TILA claim. However, the difference in the facts of that case and the present case compel us to reach a different result. We held in that case that TILA § 1612(b) prevented the plaintiff's recovery against HUD. *Id.* at 14. In light of this finding, it was not necessary to determine the parties' respective burdens of producing evidence that a TILA disclosure statement was given. We did, however, find that the Debtor in that case had received a TILA disclosure statement despite her testimony to the contrary. *Id.* at 9. Our findings in that case were based both on our observations of that particular debtor as a witness, and the fact that neither she nor her counsel had attempted to obtain the disclosure statement from HUD or from the original mortgagee prior to trial. *Id.* at 9, 14. The Debtor's testimony in the

---

5. 15 U.S.C. § 1635(c) provides that ...

    (c) Notwithstanding any rule of evidence, written acknowledgement of receipt of any disclosures required under this subchapter by a person to whom information, forms, and a statement is required to be given pursuant to

this section does no more than create a rebuttable presumption of delivery thereof.

This passage suggests that written acknowledgement should be produced before it will be presumed that TILA disclosures were given.

**914**

present case, while appearing uncertain regarding the nature of the TILA disclosure, was believable and not so vague as to be discounted. In addition, the Debtor in the present case made substantial efforts, through discovery, to obtain a copy of any TILA disclosures given in connection with her mortgage. Despite these efforts, the Defendant was unable to produce a disclosure statement.

In light of the above, we credit the Debtor's testimony that she received no TILA disclosure statement. We find that, in light of the Debtor's testimony, the Defendant has failed to sustain its burden of establishing compliance with TILA in the present case.

## F. CONCLUSION

Given our conclusions as set forth above, we find in favor of the Debtor and shall enter an Order reducing the only valid claim filed on behalf of the Defendant by the $1,000.00 recoupment penalty and awarding reasonable attorney's fees to her counsel.