698 So.2d 585 (1997)
Patricia W. DOVE, Appellant,
v.
John McCORMICK, Trustee, et al., Appellees.
No. 96-2397.
District Court of Appeal of Florida, Fifth District.
August 1, 1997.
Rehearing Denied August 27, 1997.
*586 Robert K. Dwyer, Orlando, and James A. Bonfiglio, Boynton Beach, for Appellant.
Virginia B. Townes of Akerman, Senterfitt & Edison, P.A., Orlando, for Appellee John McCormick Trustee.
ANTOON, Judge.
In this mortgage foreclosure case, Patricia W. Dove (Dove) appeals the trial court's order granting final summary judgment in favor of John McCormick, Trustee. We affirm.
In June of 1986, Dove executed a mortgage in favor of The First, F.A., encumbering real property located in Orange County. The transaction was subject to the requirements of the federal Truth In Lending Act (TILA). See 15 U.S.C. §§ 1601-1667 (1994); Regulation Z, 12 C.F.R. § 226 (1995). Thereafter, the Office of Thrift Supervision (OTS) declared The First to be a troubled institution and appointed the Resolution Trust Corporation (RTC) as receiver to liquidate The First's assets. In February of 1991, RTC assigned Dove's mortgage to Blazer Financial Services. Thereafter, in August of 1994, Blazer assigned Dove's mortgage to John McCormick. Within the month, McCormick sued to foreclose the mortgage because Dove had failed to make monthly payments. Dove filed an answer generally denying liability and asserting affirmative defenses of rescission and recoupment.
McCormick filed a motion for final summary judgment. In response, Dove filed an affidavit, alleging that she had never received "truth in lending" disclosures as required by Federal Reserve Regulation Z. The trial court entered final summary judgment of foreclosure in favor of McCormick, concluding that Dove's defenses pertaining to rescission and recoupment were barred by the statutes of limitations and repose. This appeal follows.

OVERVIEW OF TILA
Congress enacted TILA in order to protect unwary consumers from the deceptive practices of some lenders. Congress' purpose was
to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices.
15 U.S.C. § 1601(a)(1994). To this end, TILA requires that costs and fees be accurately and timely disclosed to consumers. See 15 U.S.C. §§ 1638, 1602(u)(1994). When there has not been an accurate disclosure by the lender in consumer credit transactions, the act provides the consumer with the alternative remedies of rescission and civil liability damages. See 15 U.S.C. §§ 1635, 1640 (1994).
With regard to the remedy of rescission, TILA provides the consumer the absolute right to rescind a contract within three days following the transaction without regard *587 to the accuracy of the disclosure. See 15 U.S.C. § 1635(a)(1994). This statutory remedy may be extended for up three years if the lender fails to comply with the statutory disclosure requirements. Specifically, TILA provides:
An obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first, notwithstanding the fact that the information and forms required under this section or any other disclosures required under this part have not been delivered to the obligor,....
15 U.S.C. § 1635(f) (1994) (emphasis added); Regulation Z, 12 C.F.R. § 226.23(a)(1994). Importantly, the timely exercise of this right of rescission results in the discharge of the consumer's liability for any security for the loan's collection, any finance or other charge, and any security interest given by the consumer. 15 U.S.C. § 1635(b). Consequently, if a consumer prevails on a rescission claim, the lender can only collect on the loan principal. Beach v. Great Western Bank, 692 So.2d 146, 148 (Fla.1997).
TILA also imposes civil liability on lenders who fail to comply with the statute's disclosure requirements. In this regard, section 1640 enables consumers to recover money damages from lenders for TILA violations:
(a) ... Any creditor who fails to comply with any requirement imposed under this part, including any requirement under section 1635 of this title, ... is liable to such person in an amount equal to the sum of-
(1) any actual damage sustained by such person as a result of the failure;
(2)(A)(i) in the case of an individual action twice the amount of any finance charge in connection with the transaction,..., except that the liability under this subparagraph shall not be less than $100 nor greater than $1,000.00; or
* * * * * *
(3) in the case of any successful action to enforce the foregoing liability or in any action in which a person is determined to have a right of rescission under section 1635 of this title, the costs of the action, together with a reasonable attorney's fee as determined by the court.
15 U.S.C. § 1640(a)(1), (2)(A), (3) (1994). Any action for damages under section 1640 must be brought within one year of the violation. 15 U.S.C. § 1640(e) (1994).
Importantly, section 1640 also authorizes the consumer to utilize the defense of recoupment or set-off. Specifically, if the consumer, in his or her defense, can establish TILA violations, then he can recover money damages in recoupment. The damages available are the same as would have been available had the consumer initiated suit under the statute. 15 U.S.C. § 1640(e) (1994).

AFFIRMATIVE DEFENSE OF RESCISSION
In her first affirmative defense, Dove sought to assert her statutory right to rescission based upon alleged violations of TILA and Regulation Z. In so arguing, Dove requested rescission of the mortgage agreement, termination of any security interest in the property, actual damages, and attorney's fees pursuant to section 1640(a). However, Dove's right to rescind, along with its concomitant remedies, expired three years after the consummation of the loan transaction. This is so because, as our supreme court explained in Beach:
TILA mirrors a statute of repose rather than a statute of limitations ... in that it `precludes a right of action after a specified time . . . rather than establishing a time period within which the action must be brought measured from the point in time when the cause of action accrued.'
Beach v. Great Western Bank, 692 So.2d at 152 (quoting Kush v. Lloyd, 616 So.2d 415, 420 (Fla.1992)) (emphasis in original). Accordingly, this claim for relief was properly rejected by the trial court.

AFFIRMATIVE DEFENSE OF RECOUPMENT
In her second affirmative defense, Dove sought recoupment under section 1640(e). Specifically, she again sought rescission of the mortgage transaction as well as the recovery of section 1640 damages.

*588 (a) Rescission
Dove argues that the trial court should have permitted her to assert her claim of rescission after the three-year statute of limitations period had expired because it was raised as a defense in the nature of recoupment. Specifically, she maintains that "the defense of recoupment may be asserted defensively where the underlying claim is barred by the statute of limitations." Willoughby v. Dowda & Fields, Chartered, 643 So.2d 1098, 1099 (Fla. 5th DCA 1994). More particularly, Dove relies on Dawe v. Merchants Mortgage & Trust Corp., 683 P.2d 796 (Colo.1984), wherein the Colorado supreme court, treating the three-year period in subsection 1635(f) as a statute of limitation instead of a statute of repose, held that if the borrower's demand for rescission was in the nature of recoupment it could be raised more than three years after the consummation of the mortgage loan. Id. at 800-801.
However, we affirm the trial court's ruling denying Dove's claim of rescission because our supreme court recently held that "under Florida law, an action for statutory right of rescission pursuant to 15 U.S.C. § 1635 may not be revived as a defense in recoupment beyond the three-year expiration period contained in section 1635(f)." Beach v. Great Western Bank, 692 So.2d at 153. The court explained that, as noted above, section 1635(f) explicitly provides that both the right and the remedy of rescission expire three years after the closing date. Florida has long recognized that "when the right and the remedy are created by the same statute, the limitations of the remedy are treated as limitations of the right." Id. at 152. (quoting Bowery v. Babbit, 99 Fla. 1151, 1163-64, 128 So. 801, 806 (1930)). Therefore, the trial court properly recognized that Dove may not seek the remedy of rescission under the guise of an affirmative defense of recoupment beyond the statutory three-year time period.

(b) Damages
Dove also challenges the trial court's ruling that her right to seek damages under section 1640 was extinguished when the mortgage was involuntarily assigned to the RTC. Again, we affirm.
Section 1641(a) provides in part:
Section 1641. Liability of assignees
(a) Except as otherwise specifically provided in this subchapter, any civil action for a violation of this subchapter or proceeding under section 1607 of this title which may be brought against a creditor may be maintained against any assignee of such creditor only if the violation for which such action or proceeding is brought is apparent on the face of the disclosure statement, except where the assignment was involuntary.

(Emphasis added). McCormick maintains that he was insulated from section 1640 damages under subsection 1641(a) because RTC had received the involuntary assignment of Dove's mortgage, and therefore any subsequent voluntary assignees of RTC, such as himself, were protected from liability.[1] In other words, he argues that once an involuntary assignment of a mortgage is made to RTC, all subsequent voluntary assignees receive the same protection from liability provided to RTC by subsection 1641(a).
Dove disagrees, contending that the protection from liability set forth in subsection 1641(a) inures only to the benefit of the RTC and not to its subsequent assignees. In support of her argument Dove relies on In re Pinder, 83 B.R. 905 (Bankr.E.D.Pa.1988), and In re Gillespie, 110 B.R. 742 (Bankr. E.D.Pa.1990). Such reliance is misplaced.
In re Pinder involved a residential loan made by the Secretary of Housing and Urban Development (HUD). After making the loan, HUD assigned the mortgage to Lomas & Nettleton Company. The question before the court was whether the consumer, who alleged that she had not received a proper *589 TILA disclosure, was barred from pursuing damages from Lomas & Nettleton because subsection 1612(b) shielded Lomas & Nettleton, as well as HUD, from civil liability. The bankruptcy court held that Lomas & Nettleton was liable for recoupment damages notwithstanding subsection 1612(b), which exempted governmental agencies from civil liability. Pinder, 83 B.R. at 910. In re Gillespie also involved a HUD mortgage assignment to Lomas & Nettleton Company. The same bankruptcy court determined that the exemption from liability in subsection 1612(b) inured only to the government's benefit and could not be assigned. Gillespie, 110 B.R. at 749. The court pointed out that subsection 1641(a) was not applicable because the mortgage assignment by HUD to Lomas & Nettleton was voluntary. Id. at 750. Clearly neither Pinder nor Gillespie is dispositive of the issue now before this court because those cases do not address subsection 1641(a) or involuntary assignments.
Here, it is uncontested that Dove could not have recovered damages from RTC because her mortgage was involuntarily assigned to RTC by OTS. The question then becomes whether the statutory immunity granted to RTC inured to McCormick's benefit in his position as a subsequent voluntary assignee of RTC. In this regard, subsection 1641(a) simply states that any civil action that may be brought by a consumer against a creditor may also be brought against a creditor's assignee "except where the assignment is involuntary." 15 U.S.C. § 1641(a) (1994). Dove contends that McCormick is precluded from relying on subsection 1641(a) because the statute does not specifically provide that immunity passes to subsequent voluntary assignees. We disagree and conclude that the trial court was correct in denying Dove's claim for damages.
Generally, an assignor conveys to the assignee his or her rights and interests in the property or interest assigned. State v. Family Bank of Hallandale, 667 So.2d 257, 259 (Fla. 1st DCA 1995). In other words, the "assignee stands in the shoes of his assignor." Cadle Co. II, Inc. v. Stamm, 633 So.2d 45, 46 (Fla. 1st DCA 1994)(quoting Federal Deposit Insurance Corp. v. Bledsoe, 989 F.2d 805, 809-810 (5th Cir.1993)). Furthermore, where a statute is silent, the courts "fill in the inevitable statutory gaps" by relying on the common law. On the subject of assignments, the common law "speaks in a loud and consistent voice: An assignee stands in the shoes of his assignor." Federal Deposit Insurance Corp. v. Bledsoe, 989 F.2d at 809-810 (emphasis in original). In the instant case, McCormick, as assignee, stands in the shoes of the RTC. Pursuant to subsection 1641(a), Dove could not have sued the RTC for section 1640 damages because the assignment to the RTC was involuntary, thereby permanently extinguished Dove's right to pursue damages. The later voluntary assignment to McCormick did not revive it. Thus, Dove is not entitled to recover section 1640 damages from McCormick.[2]
Apart from the federal statutes applicable here, we find persuasive McCormick's argument that public policy considerations also dictate that Dove's claim for damages must fail. In this regard, McCormick recognizes that RTC was created by Title V of the Financial Institutions Reform, Recovery, and Enforcement Act, Pub.L. No. 101-73, 103 Stat. 183 (codified in different sections of 12 & 15 U.S.C. (1989)) (FIRREA). Under FIRREA, a troubled financial institution's assets may be seized and the RTC appointed as receiver or conservator to protect the interests of depositors, the institution's shareholders, and as McCormick argues, ultimately the taxpayers. See 12 U.S.C. § 1464(d)(2)(A)(1996). McCormick maintains that immunity from liability for TILA violations upon a mortgagee's voluntary assignment after an involuntary assignment is entirely consistent with this policy because, when an involuntary assignment occurs under FIRREA, there is a strong public policy in favor of protecting the validity, value, and *590 marketability of the assets assigned.[3] Of course, there is also a strong public policy in favor of consumer protection as is evident in the provisions of TILA. However, this latter policy is impacted only minimally by extinguishing the consumer's right to pursue damages against a subsequent voluntary assignee of RTC. See generally 15 U.S.C. § 1601(a)(1994); Mourning v. Family Publications Service, Inc., 411 U.S. 356, 93 S.Ct. 1652, 36 L.Ed.2d 318 (1973).
We also agree with McCormick that TILA's policy of authorizing the punishment of lenders who fail to make the required disclosures would not be served by allowing a consumer to maintain an action against a voluntary assignee who obtained ownership of a mortgage after it had been involuntary assigned. Such punitive sanctions would be meaningless at that point because the offending lender no longer has an interest in the mortgage, and therefore, the lender cannot be assessed damages in the nature of recoupment under section 1641. While the imposition of sanctions on a subsequent assignee could discourage well-intended investors from purchasing a troubled institution's assets, it would do nothing to inhibit violations of TILA's disclosure requirements by the initial lender.
Moreover, the procedures under FIRREA clearly are aimed to encourage investors to participate in the liquidation of an institutions's assets by purchasing mortgages from the RTC, since investors can be reasonably sure that the assets are valid and enforceable. However, there would likely be a chilling effect on the sale of such mortgages if an investor purchasing a mortgage from RTC could later be subject to liability for damages in recoupment because the investor would be less likely to pay the full market price for the mortgage if he is unsure of whether the initial lender complied with TILA's disclosure requirements.

CONCLUSION
In summary, Dove's affirmative defense of rescission is time barred pursuant to section 1635(f). In addition, Dove is precluded from seeking the remedy of rescission under the guise of recoupment pursuant to Beach v. Great Western Bank, 692 So.2d 146 (Fla. 1997). Lastly, her claim for section 1640 damages was extinguished as a result of OTS's involuntary assignment of her mortgage to the RTC. Accordingly, we affirm the trial court's final summary judgment in favor of McCormick.
AFFIRMED.
W. SHARP and GOSHORN, JJ., concur.
NOTES
[1] At trial, McCormick mistakenly argued that subsection 1641(e), which was added to the statute in 1995, applied retroactively. Any reliance by the trial court on this subsection constitutes harmless error because subsection (e) reiterates the standard of assignee liability set forth in subsection (a) of the statute. Moreover, under both subsection (a) and (e), assignee liability is cut off by an involuntary assignment.
[2] Dove's mortgage contained a variable interest rate provision. Dove argues that each rate change constituted a separate disclosure violation and that, as a result, the one-year statute of limitations under section 1640(e) had not run. See Key Savings Bank v. Dean, 695 So.2d 808 (Fla. 4th DCA 1997). However, since the involuntary assignment to the RTC extinguished Dove's right to maintain a civil action, the argument has no bearing on this case.
[3] In D'Oench, Duhme & Co. v. Federal Deposit Insurance Corp., 315 U.S. 447, 456-62, 62 S.Ct. 676, 679-81, 86 L.Ed. 956, reh'g. denied, 315 U.S. 830, 62 S.Ct. 910, 86 L.Ed. 1224 (1942), the supreme court emphasized the strong policy considerations for protecting the assets of failed banking institutions. Relying on D'Oench and the common law of assignments, federal courts have extended to FDIC's assignees the same rights that the FDIC possesses in enforcing the obligations of a failed institution. In support of this position, courts rely in part on "policy considerations underlying the necessity of assuring the broadest possible market for the assets of failed banks and federally insured depository institutions." National Enterprises, Inc. v. Smith, 114 F.3d 561 (6th Cir.1997). See also H.R.Rep. No. 54(I), 101st Cong., 1st Sess., 2 (1989), reprinted in 1989 U.S.C.C.A.N. 86.