**BANK OF SALT LAKE, a Utah Corporation, Plaintiff and Respondent,**

v.

**The CORPORATION OF the PRESIDENT OF the CHURCH OF JESUS CHRIST OF LATTER–DAY SAINTS, a Utah Corporation sole, Defendant and Appellant.**

No. 13704.

Supreme Court of Utah.

April 29, 1975.

Raymond W. Gee, J. Douglas Mitchell, Kirton, McConkie, Boyer & Boyle, Salt Lake City, for defendant and appellant.

Carman E. Kipp, Kipp & Christian, Salt Lake City, for plaintiff and respondent.

MAUGHAN, Justice:

Appellant, Corporation of the President of the Church of Jesus Christ of Latter-

Day Saints, a Utah corporation sole, seeks reversal of a judgment against it, and in favor of respondent, Bank of Salt Lake, a Utah corporation. The judgment is in the sum of $59,205.80, together with interest from the 20th day of February, 1974, and costs. The operative facts necessarily include other parties; they are Kerry-Aldon, Inc., Aldon Cook, and Lealand Ronald Bruderer, an employee of appellant. Hereafter the appellant will be referred to as the Church; the respondent as the Bank; Kerry-Aldon, Inc., as Kerry-Aldon; Aldon Cook, as Cook; and Lealand Ronald Bruderer, as Bruderer.

During parts of 1968 and 1969, the Church was purchasing school furniture and fixtures from Kerry-Aldon. The Bank financed the operation of Kerry-Aldon, taking in return promissory notes, and, as security for the same, assignments of Kerry-Aldon Receivables, some of which were due, or to become due, from the Church.

In four instances, the Bank, solely on the advice of Cook (a principal in Kerry-Aldon), viz., August of 1968, January of 1969, and twice in March of 1969, addressed letters to Bruderer, "Seminaries and Institutes, L. D. S. Church, Union Pacific Building, Salt Lake City, Utah, 84111." The following letter is prepresentative of all letters in issue, and presents operative facts (anent the letters) sufficient for our decision:

January 15, 1969

Mr. Leland [sic] Bruderer
Seminaries and Institutes
LDS Church
Union Pacific Building
Salt Lake City, Utah 84111

Dear Mr. Bruderer:

Kerry-Aldon Associates, P. O. Box 2312, Salt Lake City, Utah, as consideration for credit extended to them by the Bank of Salt Lake, has assigned the proceeds of their invoice #'s 1076, 1038, 1036, 1034, 1026, 1080, 1041, 1043, 1032, 1040, 1031, 1049, 1047, 1103, 1097, 1104, 1105, 1107 and 1115, totaling $14,147.76.

Will you please acknowledge the assignment on the bottom of this letter, if you agree to the terms. A copy is enclosed for your file.

Please sign and return the original to the Bank.

Sincerely yours,
BANK OF SALT LAKE
Paul D. West
Assistant Vice President

Seminaries and Institutes, LDS Church, hereby acknowledges the indebtedness described above and agrees to the assignment consenting to make all disbursements on the above invoices payable to the Bank of Salt Lake and Kerry-Aldon Associates, jointly, and to mail such disbursements to the Bank of Salt Lake, 3081 South State, Salt Lake City, Utah.

Seminaries and Institutes, LDS Church

Dated: 15 Jan. 1969　　　　By Lealand R. Bruderer
　　　　　　　　　　　　　　Title

Cook personally delivered each of these letters to Bruderer, obtained his signature on the acknowledgment, and returned each letter to the Bank. Not at any time did

the Bank have any direct contact with the Church, nor did the Bank receive any communications directly from the Church. The only contact the Bank had with anyone connected with the Church was through Cook, and his contacts with Bruderer.

Bruderer was an employee of the Church, in what was known as the Seminaries and Institutes Department of the Church Educational System. His duties were largely clerical. Some of his duties required him to obtain basic payroll information from seminary and institute teachers, to fill out requisition forms for various seminaries and institutes, and some of these were initially reviewed by his immediate superior. The only nonclerical function assigned to Bruderer was the examination of various brands of furniture and fixtures and his estimation of the cost of furnishings requested by a seminary or institute. He had no authority to sign any instruments, and his testimony (uncontroverted) is that he told Cook he did not have any authority, whereupon Cook assured Bruderer that he would see to it that the letters of acknowledgment, together with the proper invoices, would be directed to the proper Church department.

This course of dealing continued through March of 1969, resulting in Bruderer's execution of four acknowledgments such as the one set forth. The letters of January and March 1969 contained certain invoice numbers and the acknowledgment provision. No question concerning this course of conduct was raised by the Bank until October of 1969, even though all amounts owing from the Church to Kerry-Aldon had long since been paid to Kerry-Aldon. Thus, in its letter of October 13, 1969, mailed to Mr. Leland [sic] Bruderer, Seminaries and Institutes L. D. S. Church, Union Pacific Building, Salt Lake City, Utah, 84111, the Bank states in part, ". . . Apparently, through some clerical or bookkeeping oversight in your office, payment of certain accounts payable from your office and receivable by Kerry-Aldon Associates [sic] has been made directly to Kerry-Aldon Associates [sic]."

Cook was an owner of one half the shares of Kerry-Aldon. He had been doing business with various people and departments of the Church since about 1965. Cook testified that it was upon his advice that the Bank addressed the subject acknowledgment letters to Bruderer. He further testified that such purchase orders as he did get from the Church did not come from the Seminaries and Institutes of the L. D. S. Church, but came from either the Church Building Department, 125 North Main Street, Salt Lake City, or the Schools Division, 414 Beehive Bank Building, Salt Lake City; also that, so far as he knew, Bruderer's principal function was to examine merchandise, such as Cook had, and to make recommendations as to its fitness for the program of seminaries. Cook referred to Bruderer as "just one of the cogs . . ."; and that he took the letters to Bruderer, because he thought Bruderer would sign.

█ The ultimate question is: Did the Church receive notice of the assignments made, by Kerry-Aldon, to the Bank? If it did, a companion question is: Did such notice reasonably identify the rights assigned?

The Bank asks affirmance of the order of the district court, claiming that the notice received by Bruderer was notice to the Church, and further claiming that the Church is estopped from denying alleged inaccuracies in the invoices, notices, assignment agreements, and acknowledgments herein. The Bank further states that in any event such allegations are irrelevant in light of the Bank's subsequent filing of financing statements covering all of Kerry-Aldon's accounts.[1]

The provisions of our Uniform Commercial Code determine the result of this appeal.

---

1. This contention is not in accord with the U.C.C. for such filing does not constitute receipt of notification of an assignment to the account debtor as required in 70A-9-313(3).

The pertinent provisions of 70A–1–201, U.C.A.1953, as amended, are:

(25) A person has "notice" of a fact when

(a) he has actual knowledge of it; or

(b) he has received a notice or notification of it; or

(c) from all the facts and circumstances known to him at the time in question he has reason to know that it exists.

A person "knows" or has "knowledge" of a fact when he has actual knowledge of it. "Discover" or "learn" or a word or phrase of similar import refers to knowledge rather than to reason to know. The time and circumstances under which a notice or notification may cease to be effective are not determined by this act.

(26) A person "notifies" or "gives" a notice or notification to another *by taking such steps as may be reasonably required to inform the other in ordinary course* whether or not such other actually comes to know of it. A person "receives" a notice or notification when

(a) it comes to his attention; or

(b) it is duly delivered at the place of business through which the contract was made or at any other place held out by him as the place for receipt of such communications. [Emphasis supplied.]

(27) Notice, knowledge or a notice or notification received by an organization is effective for a particular transaction from the time when it is brought to the attention of the individual conducting that transaction, and in any event from the time when it would have brought to his attention if the organization had exercised due diligence. An organization exercises due diligence if it maintains reasonable routines for communicating significant information to the person conducting the transaction and there is reasonable compliance with the routines. *Due diligence does not require an individual acting for the organization to communicate information unless such communication is part of his regular duties* or unless he has reason to know of the transaction and that the transaction would be materially affected by the information. [Emphasis supplied.]

Pursuant to the provisions of subparagraph 25, with reference to the assignments, the Church, to have notice would have had to have actual knowledge, received a notice or notification, or from the circumstances had reason to know that they existed. It appears clearly from the record that the Church certainly did not have actual knowledge, nor did it receive notice or notification, nor from the circumstances did it have reason to know that the assignments existed. The record clearly confirms that the notice of assignments never advanced beyond the office of Bruderer, but that the invoices entitling Kerry-Aldon to be paid did, for Kerry-Aldon was paid. Cook knew where the transactions were handled, for he had dealt with the Church on prior occasions, and had, on those occasions, properly dealt with the Church Building Department or the schools division. Cook's testimony was that he took these notices of assignment to Bruderer because he knew he could get Bruderer to sign them, and after which he delivered them to the Bank.

Was Bruderer such a person, within the employ of the Church, who could reasonably be supposed to receive notice of an assignment sufficient to bind the Church? The description of his duties, the function of his office, his denial to Cook of authority to execute the notices, the failure of Cook to deliver the notices of assignment, together with the invoices, to the departments to which Cook did deliver the invoices, all show that Bruderer was not in such a position that notice to him could reasonably be construed to be notice to the Church.[2]

Did the Bank in the ordinary course of this commercial transaction take such steps as could be reasonably required to inform the Church of these assignments? The record is clear that it did not. It had no direct dealings with the Church, it relied completely on what Cook said and did. It ignored the names of the entities and addresses listed on the invoices. The Uniform Commercial Code has not abrogated the prudent principle found in that honored legal aphorism "One deals with an agent at his peril."

In addition, the Bank let more than a year pass without receiving any checks from the Church made payable jointly to it and Kerry-Aldon, before it even made an inquiry as to why it had not. This inquiry is found in the Bank's letter of October 13, 1969, addressed to Bruderer at the seminaries and institutes, L.D.S. Church, Union Pacific Building, Salt Lake City, Utah, 84111 wherein the showing is clear that the Bank, at that late date, yet thought payment of accounts was to come from Bruderer's office. Common prudence would seem to have sparked an earlier and more searching investigation.

The subject notices never came to the attention of the. Church, neither were they delivered to the place of business at which the contract of purchase was made, nor at any other place held out by the Church as the place for the receipt of such communications.[3] Due diligence did not require communication of such information, since such was not one of Bruderer's duties; futhermore, Bruderer in the performance of his work did not have reason to know of the terms of the invoices and therefore that the transaction would be materially affected by his information concerning the assignment.[4]

■ Indeed, from the form of the notices of assignment (prepared by the Bank and Cook), no one could have known what the transaction was. The record shows that some of the invoice numbers were duplicated; it further shows that one of the invoices listed a receivable from a business entity not a party to this lawsuit. The record also shows that the invoice numbered 1171 purporting to cover an assigned amount of $34,966 turned out to be an invoice in the amount of $85. An interesting part of the testimony shows that Cook listed, as a receivable, items which he had in his warehouse, unsold, but which he hoped to sell to the Church.

■ Absent notice, it is to be noted that the claims of the Bank, as assignee, were subject to any defense the Church, as account debtor, had against Cook, as assignor, 70A–9–318(1)(a). Although not necessary to this decision, it should be observed that the subject notices of assignment, devoid as they were of any reasonable identification of the rights assigned, ran counter to the provisions of 70A–9–318(3).

■ Reference is made to the Bank's claim for estoppel, predicated on Bruderer's apparent authority. Manifestation sufficient to support a claim of reliance on an agent's apparent authority must come from the principal. There is nothing in the record to show that the Church ever made any manifestation regarding Bruderer's authority to the Bank.[5]

■ The assignee Bank bore the burden of proof.[6] It failed in its proof. The judgment appealed from is reversed, and this matter is remanded with instructions to render judgment for appellant, in accordance with this opinion. Costs to appellant.

HENRIOD, C. J., and ELLETT, CROCKETT and TUCKETT, JJ., concur.

3. See Ertel v. Radio Corporation of America, Indiana, 14 U.C.C.Reptr.Serv. 514 (1974), as an example of proper receipt of notification.

4. See Uniform Commercial Code, Sec. 1–201, Official Comment, 27.

5. Restatement, Agency (Second), Sec. 27; Williston on Contracts (3d Ed.), Sec. 277A, pp. 222–227; Santi v. Denver & Rio Grande Western Railroad Co., 21 Utah 2d 157, 442 P.2d 921 (1968).

6. Peoples Finance & Thrift Co. v. Landes, 28 Utah 2d 392, 503 P.2d 444 (1974).