944 F.2d 911
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 DELTA TRAFFIC SERVICE, INC., a Texas Corporation, Plaintiff-Appellant,
v.
SYSCO INTERMOUNTAIN FOOD SERVICES, INC., a Utah corporation,
Defendant-Appellee.
 No. 90-4034.
 United States Court of Appeals,
Tenth Circuit.
 Sept. 10, 1991.
 
 Before SEYMOUR, BALDOCK and BRORBY, Circuit Judges.
 ORDER AND JUDGMENT*
 BRORBY, Circuit Judge.
 
 
 1
 Plaintiff-Appellant Delta Traffic Service, Inc. (Delta), appeals the district court's adverse judgment in its action against Defendant-Appellee Sysco Intermountain Food Services, Inc. (Sysco). Delta, the purported assignee of certain freight bills, seeks to collect additional charges allegedly owed by Sysco for trucking services rendered by Delta's assignor, Transpo International, Inc. (International).
 
 
 2
 As International's assignee, Delta sued Sysco to collect an alleged difference between the ICC tariff and the amount Sysco was billed (and duly paid). Following trial, the district court ruled that Delta "failed to establish that, at the time of its assignment, the assignor, Transpo International, Inc., had any rights or interests" in the freight bills to convey to Delta. The court also held that Delta failed to meet its burden of proof as to the elements of the alleged departure from the tariff. Accordingly, the district court ordered the dismissal of Delta's complaint "upon the merits," and awarded costs to Sysco. Delta timely appealed, and argues there is no evidence to support the trial court's ruling. We affirm.
 
 
 3
 As Delta alleges the underpayment of filed tariff rates in violation of 49 U.S.C. § 10761(a), jurisdiction in the district court was proper under 28 U.S.C. § 1337(a). See Kansas City Terminal Ry. Co. v. Jordan Mfg. Co., 750 F.2d 551, 552 (7th Cir.1984). We exercise appellate jurisdiction under 28 U.S.C. § 1291.
 
 
 4
 We briefly explain the identity and relationships of the parties and participants in order to provide a background against which the issues on appeal may be understood. Delta audits and collects freight bills for motor carriers. Sysco is a shipper or consignor. International provided trucking services to Sysco and other shippers. Transpo Express, Inc. (Express), which the trial court found was the owner of the accounts receivable, was formed in November 1984 to take over International's trucking operations.
 
 I.
 
 5
 The critical issue in this case involves the ownership of the freight bills which were allegedly assigned to Delta for collection. International assigned "all of its right title and interest" in the freight bills to Delta. Express is not a party to the assignment. The district court held Delta failed to establish that its assignor had any rights or interests to convey. The court concluded, "the November, 1985, assignment from Transpo International, Inc. to plaintiff [Delta] conveyed no rights to plaintiff upon which this action can be maintained."
 
 
 6
 Delta argues "[t]he evidence does not support the trial court's conclusion that the assignment between the common carrier and Delta Traffic Service, Inc., was invalid." Sysco responds that the district court made no finding or ruling with respect to the validity of the assignment. "Rather," Sysco argues, "the court found that at the time the assignment was made to plaintiff, plaintiff's assignor had no rights with respect to the causes of action brought by plaintiff which could be assigned." We agree with Sysco.
 
 
 7
 The district court factually found that "[a]t the time of the attempted assignment ... International had no interest in or right to the freight bills involved in this action or to the proceeds therefrom, all such rights then belonging to Transpo Express, Inc." Contrary to Delta's assertions, this simply is not a legal conclusion as to the validity of the assignment. It is, rather, a factual determination as to the ownership of the accounts receivable, which we review for clear error. Fed.R.Civ.P. 52(a).
 
 
 8
 The record contains abundant evidence supporting the trial court's finding. After January 1, 1985, Express's operations were funded through its acquisition and use of International's accounts receivable and the funds generated from those accounts. Express's president, Mr. Cheeney, testified that all the funds collected by Express during 1985--whether from Express's operations or from International's accounts receivable--were used by Express to pay its own obligations. None of the monies obtained from the accounts receivable were paid to International until sometime after September 1985, when all Express's operating expenses were already paid.
 
 
 9
 The record also shows that Express controlled all carrier services provided to Sysco from January 1, 1985 through September 1985, and that Express generated all the freight bills for those services. Express received, and controlled the disbursement of, all revenues collected through those bills. The financial statements prepared by Express during this time period reflect Express's ownership of all accounts receivable and the revenue from those accounts. Express reported the income generated from the common carrier operations as its own income on its 1985 corporate tax return. The testimony of Spence Blackwood, a vice-president of International, further supports the trial court's conclusion that the accounts receivable in fact belonged to Express, rather than International.
 
 
 10
 The evidence favors Delta in only two respects. First, payments under the bills were made by check payable either to International or to Allied Carriers Exchange, a freight bill factoring company. We find this fact insignificant, in light of Express's control over, and exclusive use of, the proceeds of those checks. Second, Express used International's letterhead, invoices, and other papers throughout this time period to facilitate a smooth transition.
 
 
 11
 Delta argues "[t]here is no evidence of an absolute transfer of interest in the freight bills from Transpo International to Transpo Express" (emphasis added). Delta insists that Express provided only management services for International, and that Express never acquired any interest in International's assets or freight bills. Delta also argues the district court "reached exactly the wrong conclusion from the evidence." These arguments misperceive the applicable standard of review and Delta's burden of proof as a plaintiff suing under an assignment.
 
 
 12
 The factual findings of the district court "shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." Fed.R.Civ.P. 52(a). Under the clear error standard:
 
 
 13
 Findings are not to be determined clearly erroneous unless, after a review of the entire record, we are left with a definite and firm conviction that a mistake has been made. As an appellate court, it is not for us to determine whether the trial court reached the correct decision, but whether it reached a permissible one in light of the evidence. "When a case is tried to the district court, the resolution of conflicting evidence and the determination of credibility are matters particularly within the province of the trial judge who heard and observed the demeanor of the witnesses." Dowell v. United States, 533 F.2d 1233, 1235 (10th Cir.1977).
 
 
 14
 Higgins v. State ex rel. Oklahoma Employment Sec. Comm'n, 642 F.2d 1199, 1202 (10th Cir.1981) (citations omitted). Having reviewed the record in this case, we have no firm conviction that the district court made a mistake or reached an impermissible decision under the evidence.
 
 
 15
 The parties have not specified the choice of law applicable to this case. Although the relevant events took place in Utah and Colorado, the record does not indicate which state the assignment was executed in. Neither does it indicate the state which has the more essential contacts. However, as the law of assignments applied here is the same in Utah and Colorado, the choice of law is of no practical consequence.
 
 
 16
 Looking to the substantive state law of assignments, see, e.g., Loveridge v. Dreagoux, 678 F.2d 870, 877 (10th Cir.1982); Fox-Greenwald Sheet Metal Co. v. Markowitz Bros., Inc., 452 F.2d 1346, 1353 (D.C.Cir.1971) ("the transaction must pass muster under state law before a federal question is reached"), we find it is well established that "[t]he burden of proving an assignment is upon him who claims thereunder," National Advertising Co. v. Sayers, 144 Colo. 356, 357, 356 P.2d 483 (1960); accord, Bank of Salt Lake v. Corporation of President of Church of Jesus Christ of Latter-Day Saints, 534 P.2d 887, 891 (Utah 1975). It is equally well established that an assignee takes no greater rights than his assignor had. See, e.g., Jack B. Parson Companies v. Nield, 751 P.2d 1131, 1133 (Utah 1988); Aird Ins. Agency v. Zions First Nat'l Bank, 612 P.2d 341, 344 (Utah 1980); McCormick v. Diamond Shamrock Corp., 175 Colo. 406, 487 P.2d 1333, 1335 (1971). Thus, Delta must establish the assignor's interest in addition to proving the validity of the assignment.
 
 
 17
 Having factually found Delta's assignor had no interest in the freight bills, the district court concluded, as a matter of law, that Delta failed to meet its burden of proof. The court concluded:
 
 
 18
 [Sysco] has offered evidence which supports its contention that prior to the assignment herein, Transpo International, Inc., had conveyed its interests in the freight bills underlying plaintiff's claim to Transpo Express, Inc., and that Transpo Express, Inc., generated all freight bills during 1985 and is the exclusive holder of the rights with respect thereto. [Delta] has failed to offer sufficient evidence to meet its burden of proof in overcoming the evidence offered by defendant. Thus, [Delta] has failed to establish that, at the time of its assignment, the assignor, Transpo International, Inc., had any rights or interests to convey.
 
 
 19
 We agree with the district court's legal conclusion that Delta did not offer sufficient evidence to prove International had an assignable interest in the freight bills.
 
 
 20
 We emphasize our holding, like that of the district court, does not concern the legal "validity" of the assignment. Because International had no interest in the freight bills, the validity of the assignment by which it conveyed its interest to Delta is irrelevant. So too is the issue of Sysco's "standing to challenge the validity" of the assignment.
 
 II.
 
 21
 Delta next offers an elaborate argument involving the alleged ratification of its status as the real party in interest under Fed.R.Civ.P. 17(a).[1] Essentially, the argument characterizes the trial court's adverse ruling as a procedural dismissal for failure to bring the action in the name of the proper party.
 
 
 22
 In response to Sysco's defensive contention that Delta has no standing to maintain the present cause of action and is not the real party in interest, Delta arranged the execution of certain "Affidavits of Ratification" by officers of International[2] and Express,[3] and filed them with the trial court several months before the trial. Delta claims the ratifications "cured any real party in interest concerns and estopped both Transpo and Express from later pursuing the claims against Sysco," and also argues the trial court committed reversible error by refusing to recognize the ratifications and then dismissing the action.
 
 
 23
 The flaws in this argument are substantial. First, the district court did not dismiss Delta's suit on the ground it was not prosecuted in the name of the real party in interest. Delta's action was dismissed "upon the merits" after trial to the district court. Second, the affidavits of George Plavec and Raymond Cheeney do not constitute ratifications by the real party in interest, Express. Neither constitutes a corporate act, as each is signed by an individual in his individual capacity. Moreover, as the affiants purported to ratify the original assignment, rather than the commencement of this action, the "ratifications" do not meet the requirements of Rule 17(a). See, e.g., ICON Group, Inc. v. Mahogany Run Dev. Corp., 829 F.2d 473, 478 (3d Cir.1987); 6A C. Wright, A. Miller & M. Kane, Federal Practice & Procedure, § 1555 at 418 (1990). The district court's refusal to recognize the ratifications was therefore proper.
 
 
 24
 In sum, we concur in the district court's observation that the "flurry of activity on the part of Express and others--the so-called ratification" legally amounted to nothing more than "a series of misadventures." Given our rejection of appellant's ratification argument, we do not address Delta's arguments concerning the timeliness of the attempted ratifications for purposes of the statute of limitations and the relation back language of Rule 17.
 
 Other Issues
 
 25
 Finally, Delta argues the district court erroneously concluded that Delta failed to meet its "burden of proof in establishing Sysco's liability for unpaid charges under the tariff." In its Reply Brief, Delta argues at length that Sysco owes additional payment on the freight bills. In light of our determination on the assignment issue, we do not reach the issue of Sysco's alleged liability.
 
 Conclusion
 
 26
 We find no clear error in the district court's resolution of the factual issues raised in this case. We affirm the district court's holding that plaintiff failed to meet its burden of proof as to its right to bring this action. As plaintiff's assignor had no interest in the freight bills at issue, plaintiff's complaint was properly dismissed. The judgment of the district court is AFFIRMED.
 
 
 
 *
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 Rule 17(a) provides:
 Every action shall be prosecuted in the name of the real party in interest.... No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.
 
 
 [2]
 In the "Affidavit of Ratification of George Plavec," International's president "acknowledge[d] and ratif[ied] all action and conduct taken on behalf of [International] by Raymond Cheeney, in arranging and consummating the Assignment ... on November 26, 1985."
 
 
 [3]
 In the "Affidavit of Ratification of Raymond Cheeney," Express's president "abandon[ed] and quitclaim[ed] any and all interest [Express] had, or may have had, in those [freight] bills to [International] and its assignee, Delta, and ratifie[d] the assignment of those bills from [International] to Delta." Delta does not argue that this "ratification" constitutes an effective assignment of Express's interest in the freight bills