**BAY AREA FACTORS, a division of Dimmit & Owens Financial Services, Inc., Plaintiff,**

v.

**TARGET STORES, INC., Defendant.**

No. Civ. 3–96–576.

United States District Court,
D. Minnesota,
Third Division.

Dec. 2, 1997.

Jarrett Blane Decker, Maun & Simon, St. Paul, MN, James R. Scheuerle, John W. Henke, for Plaintiff.

James Michael Njus, Steven Albert Linder, Meyer & Njus, Minneapolis, MN, for Defendant.

### MEMORANDUM AND ORDER

MAGNUSON, Chief Judge.

This matter is before the Court upon Plaintiff Bay Area Factors's Motion for Summary Judgment. Additionally, Defendant Target Stores, Inc., in its brief, has requested that summary judgment be granted in its favor. For the following reasons, the Court grants Plaintiff Bay Area Factors's motion.

### BACKGROUND

At all times relevant to this lawsuit, Platinum Merchandising, Inc. ("Platinum") was a vendor to Defendant Target Stores ("Target"). Target assigned Vendor # 3813951 to Platinum on Target's accounts payable system. In July 1994, Target received correspondence from Platinum requesting that all future payments on account be remitted to Sterling Sportswear, Inc. ("Sterling Sportswear"). After requesting and receiving a copy of the contract between Platinum and Sterling Sportswear, Target made the requested changes and recognized Sterling Sportswear as a factor on Platinum's account. Platinum, however, remained the vendor on Target's accounts payable system.

In February 1995, Target sent Purchase Order # 0496935 ("Purchase Order") to Platinum for goods to be shipped to four Target distribution centers. The Purchase Order listed Platinum as the vendor and referenced its vendor number. When Target received invoices for the goods related to the Purchase Order, they bore stamps stating, "[t]his account has been assigned to and is payable only to Bay Area Factors" and "[p]lease make check payable and remit to: Bay Area Factors." The stamp on each invoice also provided a mailing address for Bay Area Factors ("Bay Area"). In April, Target paid the invoices to Sterling Sportswear, the factor listed in Target's accounts payable system for the vendor number corresponding to the Purchase Order.

Prior to its receipt of the invoices, Target had received several documents from Bay Area. In January 1995, Bay Area transmitted by facsimile a document ("General Assignment Notice"), printed on Sterling Products letterhead, to Target's offices in Minneapolis, Minnesota. In it, Target was instructed "to make all future payments of all Sterling Products invoices directly and only to: Bay Area Factors." (Decker Aff., Ex. A.) It further stated that "these instructions are irrevocable and become effective upon your certified mail receipt of this notice." (See id.) However, no certified letter ever followed the facsimile. Also included in the facsimile was an undated letter addressed to Mary Lou Marsolek, a vendor systems specialist, notifying her that Sterling Products had assigned payments to Bay Area, as well as letters of authority from Platinum authorizing Bay Area to receive payments. Additionally, a copy of a General Assignment Notice from

Sterling Products, generically addressed to the "accounts payable supervisor," was sent to the Target Distribution Center in Maumelle, Arkansas in March 1995. However, Target's accounts payable system did not include an entry for Sterling Products, but instead listed Sterling Sportswear as the factor on the Platinum account.

Target stores receives and pays several million invoices each year. To ensure that invoices are paid to the correct parties, Target created a procedure to control its relationship with vendors. In its Supplier's Reference Guide ("Guide"), Target states that its Control Department is responsible for changing vendor information when necessary. Thus, the Guide instructs vendors to send a letter to the Control Department for the following: address changes, directions to send checks to a factor or to discontinue sending checks to a factor, and changes to the company name. (*See* Enright Aff. ¶ 5.) The Guide also includes an address for the Control Department. (*See id.*)

Bay Area now moves for summary judgment, claiming that Target's receipt of the above notices clearly provided notice that Bay Area was to be paid for the invoices in question. Target, on the other hand, believes that it never received proper notice of an assignment from Sterling Sportswear to Bay Area because all of the relevant documents referred to Sterling Products. Moreover, Target points out that Bay Area failed to follow the procedures for changing vendor information contained in its Guide. Thus, Target asserts that summary judgment should be granted in its favor. The Court now turns to resolving the issues raised in these motions.

## DISCUSSION

### A. Standard of Review

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Unigroup, Inc. v. O'Rourke Storage & Transfer Co.,* 980 F.2d 1217, 1219–20 (8th Cir.1992). The court determines materiality from the substantive law governing the claim. *See Anderson v.*

*Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Disputes over facts that might affect the outcome of the lawsuit according to applicable substantive law are material. *See id.* A material fact dispute is "genuine" if the evidence is sufficient to allow a reasonable jury to return a verdict for the non-moving party. *See id.* at 248–49, 106 S.Ct. at 2510–11. Summary judgment may also be granted in favor of a nonmoving party. *See Hvamstad v. Suhler,* 727 F.Supp. 511, 520 (D.Minn. 1989); *see also Celotex,* 477 U.S. at 326, 106 S.Ct. at 2554 ("[D]istrict courts are widely acknowledged to possess the power to enter summary judgment *sua sponte,* so long as the losing party was on notice that she had to come forward with all of her evidence."). The Court reviews the present motions with these standards in mind.

### B. Adequacy of Assignment Notice

Assignments such as the one involved in the present case are controlled by Article Nine of the Uniform Commercial Code ("UCC"), adopted in Minnesota. *See* Minn. Stat. § 336.9–318. According to the UCC, an account debtor may continue to pay the assignor until adequate notification is received indicating that the account has been assigned and that payment is to be made to the assignee. *See id.* § 336.9–318(3). Further, "notification which does not reasonably identify the rights assigned is ineffective." *See id.* Thus, the issue in the present case is whether Bay Area's notification of its assignment from Sterling Sportswear was adequate.

While "notice" is not defined within section 318 of the UCC, it is defined in section 1–202(26) as follows:

A person "receives" a notice or notification when (a) it comes to that person's attention; or (b) it is duly delivered at the place of business through which the contract was made or at any other place held out by the person as the place for receipt of such communications.

Minn.Stat. § 336.1–201(26). There is no dispute that Bay Area sent several notices to Target regarding the assignment of Sterling

Sportswear's account. However, the adequacy of both the contents of the notices and of the mode of delivery are challenged by Target. Because this Court is interpreting a uniform law, it may look to other jurisdictions for guidance in constructing provisions of the UCC. *See Old Kent Bank–Southeast v. City of Detroit,* 178 Mich.App. 416, 444 N.W.2d 162, 166 (1989).

### 1. Content of Notices

■ Target maintains that Bay Area's notices of assignment did not contain the relevant information to put Target on notice that it should have been remitting payment to Bay Area. Bay Area's first attempt at notifying Target of the assignment consisted of a facsimile transmitted in January 1995, well before the relevant invoices were received by Target, directed to the attention of Anu Puri. This facsimile contained assignment notices, copies of the assignment, and letters from Platinum authorizing payment to be made to Bay Area. The letters of authorization included the relevant purchase order numbers and the dates of the purchase orders. Additionally, a letter directed to Mary Lou Marsolek, a vendor systems specialist, was included. The letter referenced the relevant vendor and purchase order numbers, and identified the vendor and manufacturer as Platinum and Sterling Products.

■ Target asserts that because all of the above documents refer to Sterling Products instead of Sterling Sportswear, the documents failed to provide adequate notice of an assignment from Sterling Sportswear to Bay Area. It is true that if a notice does not reasonably identify the rights assigned, it is ineffective. *See Tradex, Inc. v. Modern Merchandising, Inc.,* 386 N.W.2d 800, 802 (Minn.Ct.App.1986). However, a debtor receiving a "notice of assignment that the debtor believes is incorrect or insufficient may request that the assignor produce evidence of the assignment." *Hall Bros. Constr. Co. v. Mercantile Nat'l Bank,* 642 N.E.2d 285, 290 (Ind.Ct.App.1994). In the present case, because the documents reference the purchase order number, Target cannot claim that the use of the Sterling Products name prevented it from identifying the correct account. Additionally, the authorization letters were from Platinum, the original vendor, and Target retained Platinum as the named vendor on the account. Therefore, Target received letters from the original vendor who was named on the account, and these letters specifically identified the purchase orders at issue. Even though the company "Sterling Sportswear" was not identified on any of the faxed documents, enough information was provided to allow Target to reasonably identify the account for that purchase order that had been assigned. If Target was in any way confused by the omission of Sterling Sportswear on the documents, it could have easily contacted Platinum for clarification.

Bay Area's second method of apprising Target of the assignment was to stamp the invoices for the relevant purchase orders. As discussed earlier, these stamps stated that the account had been assigned to Bay Area and that payment was to be remitted to Bay Area at the address provided. In a similar case, *Capital Factors, Inc. v. Caldor, Inc.,* 182 A.D.2d 532, 582 N.Y.S.2d 1012, 1013 (1992), the court held that invoices stamped "payable" to the factoring company were sufficient to put the account debtor on notice that the account had been assigned. The court, noting that the UCC does not require any particular form of notice, reasoned that the stamps demanded payment to someone other than the assignor and reasonably referred to the goods at issue. *See id.* Therefore, the UCC notice requirements were satisfied. *See id.*

Similarly, an Illinois court found that a letter stating that the factoring company was "working with" the assignor company and that it would "appreciate you making all checks payable" to it was sufficient to notify the account debtor of an assignment. *See Municipal Trust and Sav. Bank v. Grant Park Community Dist.,* 171 Ill.App.3d 289, 121 Ill.Dec. 449, 452, 525 N.E.2d 255, 258 (1988). In *Grant Park,* the account debtor claimed that the "notice" was not sufficient under section 9–318(3) of the UCC. However, the court held that the letter "reasonably notified defendant that plaintiff had a right to assignment and reasonably demanded payment." *Id.* The court noted that it knew of no authority requiring "magic words" for no-

tices to be effective. *Id.*; *see also Hall Bros. Constr. Co.*, 642 N.E.2d at 290 ("Section 9–318(3) does not prescribe any 'magic words' for a notice of assignment.").

The stamps Bay Area affixed on the invoices sent to Target contain clear language that the account to which the invoices correspond was assigned to Bay Area. Further, the stamps demand that payment be made to Bay Area at the address provided. Just as the letters and assignment notices warned Target of the assignment, these stamps provided Target with the necessary information to make payment to the assignee. Moreover, Target could have requested additional information from Bay Area evidencing the assignment.

Lastly, Bay Area faxed a copy of the general assignment notice to the attention of the accounts payable supervisor at Target in Maumelle, Arkansas. Again, this notice stated that Bay Area had been assigned the rights to Sterling Product's payments. For the reasons stated above, Target cannot claim that the omission of Sterling Sportswear, by itself, renders this notice ineffective. Additionally, the fact that the notice was addressed to the accounts payable supervisor should have ensured that the fax eventually reached the proper person. Even if there were no supervisor at the Maumelle location, the fax should have been forwarded to the correct person.

In summary, all of the documents which Bay Area sent to Target regarding the assignment of Sterling Sportswear's account contained sufficient information to satisfy Minnesota Statute section 336.9–318(3). From these documents, Target was able to ascertain the relevant purchase order number, the vendor number, and the fact that Platinum's account had been assigned. Thus, several pieces of information put Target on notice that an assignment had been made. The mere fact that some of the documents referred to Sterling Products instead of Sterling Sportswear is not enough to invalidate this notice. At most, this ambiguity should have caused Target to request more specific evidence of the assignment. Therefore, this Court holds that the information contained in the documents sent to Target by

Bay Area reasonably identified the rights assigned and was sufficient to satisfy the notice requirements of the UCC.

### 2. Mode of Delivery

Target also challenges the mode by which Bay Area notified Target of the assignment from Sterling Sportswear. Specifically, Target claims that Bay Area failed to follow the procedures for effecting a change in payment directions which are included in Target's Supplier's Reference Guide. The Guide directs that changes in remittance information are to be sent to Target's Control Department and provides an address to which notices are to be sent.

In analyzing this issue, this Court finds guidance in the UCC's definition of notice with respect to an organization. There, the UCC state that notice is

> effective for a particular transaction from the time when it is brought to the attention of the individual conducting that transaction, and in any event from the time it would have been brought to the individual's attention if the organization had exercised due diligence. An organization exercises due diligence if it maintains reasonable routines for communicating significant information to the person conducting the transaction and there is reasonable compliance with the routines. Due diligence does not require an individual acting for the organization to communicate information unless such communication is part of regular duties or unless the individual has reason to know of the transaction and that the transaction would be materially affected by the information.

Minn.Stat. § 336.1–201(27). Additionally, Comment Five to section 9–318 of the UCC recognizes that many large companies may require that assignments against them be filed in a particular way. Minn.Stat. § 336.9–31 cmt. 5. However, the comment goes on to note that such requirements are only validated to the extent that they allow the account debtor to require reasonable identification of the affected account and reasonable proof of the assignment, as is allowed by subsection (3). *See id.*

Target's procedures simply limit the persons to whom a notice of assignment must be sent. Such a requirement is understandably a reasonable means of assuring that the correct personnel at Target are notified of any assignment so that the appropriate changes to the accounts payable system may be made. Obviously, an organization which processes invoices in the thousands each month must implement procedures to ensure that the invoices are paid accurately. While Target's procedures are relevant to this case, those procedures may not impose more burdensome requirements than those dictated by the UCC. Moreover, Target places great emphasis on the fact that Bay Area has failed to cite any cases in which the account debtor had its own procedures for assignment notification, yet Target itself does not cite any either. Therefore, cases interpreting the notice requirements of the UCC are sufficient to determine the outcome of the present case.

Admittedly, none of Bay Area's notices regarding the assignment were mailed directly to the Control Department at Target, as is required by Target's Guide. The question, however, is not where the notices were sent, but whether the recipients of the notices should have been expected to notify the appropriate personnel. For example, in *First National Bank of Antioch v. Guerra Construction Co.*, 153 Ill.App.3d 662, 106 Ill. Dec. 582, 586, 505 N.E.2d 1373, 1377 (1987), the court held that a notice generically sent to the account debtor satisfied the UCC's notice requirements. The court reasoned that the debtor must suffer the consequences if its employees failed to route the notice to the person responsible for handling the assignment. *See id.* Thus, a notice which is reasonably accurate in who it is addressed to and which is sent to the correct address satisfies the UCC's definition of "notice" contained in section 1–201(26).

Target relies on *Bank of Salt Lake v. Corporation of the President*, 534 P.2d 887 (Utah 1975), in which the court held that a notice delivered to a clerical employee of a church was not sufficient to satisfy the UCC's requirements. There, the court noted that the employee had no authority to sign

any instruments, and the employee admitted this to the plaintiff's agent. *See id.* at 889. Additionally, due diligence did not require that the clerical employee communicate the information contained in the notice to his superiors; rather, the employee had no reason to know of the notice's importance. *See id.* at 891. Therefore, the court held that notice to the clerical employee could not be imputed to the church itself. *See id.* at 890.

Thus, if it would be reasonable for Bay Area to assume that the notices it sent would be routed to the proper persons, the UCC's requirements would be satisfied. According to Target's Guide, the proper person to handle an assignment would be someone in the Control Department. Bay Area claims that Target has represented to it that Mary Lou Marsolek worked in the Control Department during the time periods relevant to this litigation. (*See* Decker Aff. ¶ 3.) Additionally, the records indicate that it was Ms. Marsolek who handled the first assignment from Platinum to Sterling Sportswear. (*See* Enright Aff. ¶ 9, Ex. C–E.) Thus, had Ms. Marsolek been provided with any of the correspondence which Bay Area sent, the proper changes could have been made in Target's accounts payable system.

Despite the fact that no notices were sent directly to Ms. Marsolek, a letter to her was included in the fax sent to Anu Puri, a Senior Account Representative, in January 1995. (*See* Decker Aff., Ex. A, at 17.) Additionally, the general assignment notices included in this fax were addressed to the "Accounts Payable Supervisor." (*See id.*, Ex. A, at 15–16.) While Anu Puri may not be the person designated to receive assignment notices by Target's Guide, Puri was obviously involved with Platinum's initial assignment to Sterling Sportswear. In July 1994, Puri received a fax from Sterling Sportswear regarding its assignment from Platinum. Thus, Puri was aware of the importance of the information contained in the fax. Moreover, even though Puri may not have been able to make Bay Area's requested changes to the Platinum account, Puri certainly could have forwarded the 1995 fax to someone, such as Ms. Marsolek, who could have. Similarly, the general notice forms addressed to the ac-

counts payable supervisor could have easily been forwarded to that person. Surely the supervisor of the accounts payable department would understand the importance of an assignment notice. Had any one of these employees exercised due diligence, as is required by section 1–201(27) of the UCC, Target would not have wrongly paid out the Platinum invoices. Finally, Target has admitted that, at some point in time, Ms. Marsolek received a general assignment notice from Sterling Products dated March 14, 1995. (*See* Decker Aff., Ex. A at 4.) While Target is not able to establish the date on which Ms. Marsolek received this notice, Bay Area's records indicate it was sent by certified mail on March 14, 1995. (*See* Gillespie Aff., Ex. D.)

Thus, this Court finds that although Bay Area's assignment notices were not sent directly to the Control Department at Target, they were sent to Target personnel who should have known to forward them on to Control. This is especially so when one of the letters was addressed to Ms. Marsolek. Just as in *Guerra Construction,* Target cannot blame Bay Area for the failure of Target's own employees to appropriately route Bay Area's correspondence. Moreover, Target's own records indicate that, at some point, Ms. Marsolek did receive notice of an assignment. Therefore, Bay Area's mode of delivering its notices of assignment to Target were sufficient to satisfy the UCC.

### C. Judicial Estoppel

Target's final argument against granting Bay Area summary judgment is its claim that Bay Area is judicially estopped from asserting that it is entitled to payment from Target. (*See* Def.'s Mem. Opp'n at 16–22.) This argument is based on a suit filed by Bay Area against several defendants, including Sterling Products, Inc., in the Northern District of California. The California litigation ended in a stipulation for entry of judgment or dismissal, whereby the defendants were required to admit guilt as to fraud and to reimburse Bay Area. Ultimately, the amount due by the defendants was determined to be $106,155.99. Target asserts that the amount owed to Bay Area as a result of the Califor-

nia litigation includes the amount Bay Area is trying to recover from Target in the present lawsuit, and that judicial estoppel should prohibit Bay Area from receiving this "double" recovery.

Bay Area first points out that the stipulation in the California litigation made no mention of the Target invoices at issue in the present case. (*See* Pl.'s Mem.Supp. at 4.) Further, the stipulation calls for an independent accountant to determine the amount remaining due on Bay Area's agreement to purchase Sterling's receivables. (*See* Gillespie Aff., Ex. 10.) Thus, the balance of the amount owed in the California lawsuit is to be offset by any amount which Bay Area recovers from Target. (*See* Gillespie Aff., Ex. A ¶ 3.)

This Court agrees with Bay Area that judicial estoppel does not apply to this case. For judicial estoppel to apply, Bay Area must have asserted a position in this case which is clearly inconsistent with a position taken in the California litigation. *See Port Authority v. Harstad,* 531 N.W.2d 496, 500 (Minn.Ct.App.1995) (citing *Levinson v. United States,* 969 F.2d 260, 264–65 (7th Cir.1992)). The fact that Bay Area asserts that Target improperly paid Sterling Sportswear is not inconsistent with Bay Area's previous position that Sterling Products committed fraud when it sold its receivables. Thus, as long as Bay Area does not receive payment twice for the same Target invoices, nothing prevents it from claiming that Target received proper notice of Bay Area's assignment. Therefore, this Court holds that Bay Area is not judicially estopped from asserting a claim for payment against Target.

### CONCLUSION

Bay Area sent multiple notices to Target informing Target of Bay Area's assignment from Sterling Sportswear. The fact that these notices may not have contained perfect information regarding which companies were involved does not render them ineffective. Rather, the notices contained enough information, such as the correct purchase order number and correct vendor, to notify Target of the assignment. Further, the recipients of these notices should have known of their

importance and routed them to the appropriate personnel. Thus, Target's argument that it never received proper notice of Bay Area's assignment fails as a matter of law, and summary judgment must be granted for Bay Area. Additionally, because Bay Area is not asserting a position clearly inconsistent with a position it asserted in the California litigation, judicial estoppel does not apply.

Accordingly, **IT IS HEREBY ORDERED THAT:**

Bay Area Factors' Motion for Summary Judgment (Clerk Doc. No. 31) is GRANTED.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**