972 So.2d 1090 (2008)
BUILDING MATERIALS CORPORATION OF AMERICA, a New Jersey corporation, d/b/a GAF Materials Corporation, Appellant,
v.
PRESIDENTIAL FINANCIAL CORPORATION, Appellee.
No. 2D06-1604.
District Court of Appeal of Florida, Second District.
January 25, 2008.
Robert E. Johnson of GrayRobinson, PA., Tampa, for Appellant.
R.J. Haughey, II and J. Carlton Mitchell of Sivyer Barlow & Watson, P.A., Tampa, for Appellee.
*1091 SILBERMAN, Judge.
Building Materials Corporation of America, d/b/a GAF Materials Corporation (GAF), challenges a final summary judgment entered in favor of Presidential Financial Corporation with respect to Presidential's claims against GAF for breach of contract, open account, and unjust enrichment. We reverse because genuine issues of material fact preclude entry of summary judgment against GAF.
On October 11, 2000, Presidential entered into a loan and security agreement with Stanley Freight, in which Stanley Freight assigned all of its, accounts receivable (including future receivables) to Presidential as collateral for the loan. About one year later, another company, GAF, entered into a warehousing agreement with Stanley Freight, resulting in an account receivable for Stanley Freight. GAF made some payments on the account to Stanley Freight but made other payments to Presidential.
Presidential sued GAF and alleged that GAF was on notice that Stanley Freight had assigned its receivables to Presidential and that GAF was to send payments on the amount owed to Presidential. Presidential further alleged that notwithstanding the assignment, GAF made certain payments directly to Stanley Freight instead of to Presidential. GAF raised thirteen affirmative defenses; including that any agreement between GAF and Presidential was not executed by any authorized officer; director, or agent or with the approval of any authorized GAF representative. Other defenses included accord and satisfaction, estoppel, and waiver.
Presidential moved for summary judgment, arguing that no genuine issue of material fact existed with respect to GAF's receipt of the notice of the assignment of the accounts receivable and GAF's wrongful payments to Stanley Freight. In support of its motion, Presidential established that on August 5, 2002, it sent a letter addressed to "Accounts Payable Brian C. GAF Materials Corp." to a Tampa address. The letter was typed on Stanley Freight letterhead and signed by Keith Stanley, president of Stanley Freight. The letter stated that Stanley Freight had "entered into an accounts receivable financing arrangement with Presidential Financial Corporation (`Presidential'), under which all of our accounts including proceeds thereof, have been assigned to Presidential." The letter requested that payment of "any and all proceeds resulting from the sales of our products or services" be made directly to Presidential. In closing, the letter stated the following: "Please indicate, by your duly authorized signature below, your receipt and acceptance of this notice of assignment and the within remittance instructions." A completed acknowledgement appears at the bottom of the letter, signed and dated by Will Whitlock, "Logistics Mgr," on August 8, 2002.
In opposition to the motion for summary judgment, GAF filed an affidavit by John O'Keefe, Jr., Executive Director of Real Estate of GAF. Mr. O'Keefe stated that under the terms of GAF's warehousing agreement with Stanley Freight, "any notices, requests, demands, or other communications to be given" under the agreement shall be in writing and sent to its office in Wayne, N.J., to the attention of "Executive Director, Real Estate." There was no accounts payable person or department in GAF's Tampa office, and Mr. Whitlock had held the position of logistics manager for only two weeks when he signed The acknowledgement on the letter from Stanley Freight.
Mr. O'Keefe asserted that the assignment letter from Stanley Freight had not been sent in accordance with the terms of the Warehousing Agreement and that no *1092 individual in Tampa had the authority to bind GAF under the Warehousing Agreement. Further, the "duties of logistics manager were generally limited to insuring that product moved in and out of the warehouses and verifying that the amounts actually billed to [GAF] were for services performed." GAF had not been advised that Mr. Whitlock had "entered into" the assignment letter, GAF had not ratified Mr. Whitlock's purported acts in executing the acknowledgment, GAF never had knowledge of the material facts of the assignment letter purportedly signed by Mr. Whitlock until the lawsuit was filed, and GAF "did not retain the proceeds and benefits of this purported unauthorized transaction."
GAF also argued that deposition testimony reflected that a procedure had been established whereby Stanley Freight would send to GAF certain invoices for which payment was to be made to Presidential. Stanley Freight would send to GAF other invoices for which payment was to be made to Stanley Freight. GAF asserted that it paid Presidential for those invoices that Stanley Freight told GAF to pay directly to Presidential. GAF reiterated that until the lawsuit was filed, it had not been aware of the letter that was sent to the Tampa facility and signed by Mr. Whitlock, and it had not been aware of the letter's contents.
At the summary judgment hearing, the court indicated that there was no dispute that Mr. Whitlock's signature appears on the assignment letter and that Mr. Whitlock was a GAF employee or representative. The court concluded that "[y]ou-all received' the notice to make the assignment to Presidential" and that it did not accept the waiver argument. On that basis, the trial court granted final summary judgment to Presidential.
On appeal, GAF argues that summary judgment was improper because Presidential did not conclusively establish that adequate notice of the assignment of the accounts receivable had been given to GAF. GAF also argues that Presidential waived or is estopped from asserting its claim against GAF.
We review the entry of summary judgment de novo. Estate of Githens v. Bon Secours-Maria Manor Nursing Care Ctr., Inc., 928 So.2d 1272, 1274 (Fla. 2d DCA 2006). "A movant is entitled to summary judgment `if the pleadings, depositions, answers to interrogatories, admissions, affidavits, and other materials as would be admissible in evidence on file show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Id. (quoting Fla. R. Civ. P. 1.510(c)). Further,
[i]n determining whether a genuine issue of material fact exists, this court must view "every possible inference in favor of the party against whom summary judgment has been entered." It is the movant's burden to prove the nonexistence of genuine issues of material fact, "and the burden of proving the existence of such issues is not shifted to the opposing party until the movant has successfully met his burden."
Estate of Githens, 928 So.2d at 1274 (citations omitted). It is also the movant's burden to refute any affirmative defenses or to establish that they are legally insufficient. Morroni v. Household Fin. Corp. III, 903 So.2d 311, 312 (Fla. 2d DCA 2005).
It is well established under Florida law that a debtor who receives actual notice of the assignment of an account receivable or an obligation to pay may be held liable to the assignee if the debtor later pays the assigned debt to the assignor rather than the assignee. See generally, Capital City Second Nat'l Bank v. Peavy & Son Constr. Co., 585 So.2d 1123 (Fla. 1st *1093 DCA 1991); City of N. Miami v. Am. Fid. Fire Ins. Co., 505 So.2d 511 (Fla. 3d DCA 1987); Fla. First Nat'l Bank at Key West v. Fryd Constr. Corp., 245 So.2d 883 (Fla, 3d DCA 1970). As stated in section 679.4061(1), Florida Statutes (2002):
Subject to subsections (2) through (9), an account debtor on an account, chattel paper, or a payment intangible may discharge its obligation by paying the assignor until, but not after, the account debtor receives a notification, authenticated by the assignor or the assignee, that the amount due or to become due has been assigned and that payment is to be made to the assignee. After receipt of the notification, the account debtor may discharge its obligation by paying the assignee and may not discharge the obligation by paying the assignor.
With respect to notice to an organization, section 671.201(27), Florida Statutes (2002), provides as follows:
Notice, knowledge or a notice or notification received by an organization is effective for a particular transaction from the time when it is brought to the attention of the individual conducting that transaction, and in any event from the time when it would have been brought to his or her attention if the organization had exercised due diligence. An organization exercises due diligence if it maintains reasonable routines for communicating significant information to the person conducting the transaction and there is reasonable compliance with the routines. Due diligence does not require an individual acting for the organization to communicate information unless such communication is part of his or her regular duties or unless the individual has reason to know of the transaction and that the transaction would be materially affected by the information.
An organization includes a corporation. § 671.201(28).
Based on the record evidence and the affirmative defenses raised by GAF, there remain genuine issues of material fact. Concerning the issue of whether proper, binding notice was given to GAF concerning the assignment of Stanley Freight's accounts receivable, the affidavit of Mr. O'Keefe and other record evidence directly challenges the effectiveness of the notice under the applicable law. In light of the conflicting record evidence, the trial court erred in granting summary judgment to Presidential.
Although the parties have not cited, and we have not located, a Florida case concerning the effectiveness of a notice given under facts similar to what occurred here, we note cases from other jurisdictions that address the issue. In First Capital Corp. v. Norfolk Southern Railway Co., 53 UCC Rep.Serv.2d (CBC) 36, 2004 WL 718975 (N.D.Tex.2004), the district court noted that in resolving whether a notice of assignment of accounts receivable is sufficient to create liability to the assignee in the account debtor, a court should consider "whether the recipients of the communications should have been expected to notify personnel who would have dealt with the subject of the assignment. In making this inquiry, a court may consider whether the recipient's job duties involve the transmission of such communications to the appropriate individuals." Id. at *2 (citations omitted). In concluding that notice was inadequate to create liability, the court reasoned that
nothing in the record suggests that the alleged notice was provided to employees with job duties including the transmission of communications about any assignment. The record establishes that Mr. Murphy was primarily responsible for ensuring that motor vehicles on incoming *1094 trains were properly loaded and unloaded by ARS and that, in addition, he sometimes reviewed ARS bills for work done at the Shelbyville facility to ensure that the services charged for were performed by ARS. There is no evidence, however, that Mr. Murphy's duties involved communicating to others at NSTBC about any assignment, or that he would have recognized the importance of such information.
Id. at *3; see also Bank of Salt Lake v. Corp. of the President of the Church of Jesus Christ of Latter-Day Saints, 534 P.2d 887, 890-91 (Utah 1975) (concluding that the assignee failed to establish the church's receipt of notice when the assignee sent notice to a clerical employee at a location other than where the purchase contract was made and other than where the church usually received such information); Bay Area Factors v. Target Stores, Inc., 987 F.Supp. 734, 739 (D.Minn.1997) (holding that "a notice which is reasonably accurate in who it is addressed to and which is sent to the correct address satisfies the UCC's definition of `notice,'" and stating that "if it would be reasonable for [the assignee] to assume the notices it sent would be routed to the proper persons, the UCC's requirements would be satisfied").
A case Presidential relies upon in support of its position is Ertel v. Radio Corp. of America, 261 Ind. 573, 307 N.E.2d 471 (1974). There, a notice of assignment of accounts receivable was delivered by certified mail to an RCA dock employee, but the accounting department never received the notice. The court indicated that "[t]he negligence of RCA employees after the initial receipt" of the notice should not be charged to the assignee but to RCA. Id. at 474. However, the court also observed that the parties had stipulated that the mail was normally delivered by the post office to the receiving dock, that dock employees were authorized to sign receipts for certified mail, and that a dock employee had signed for the notice. Id. The court concluded that because notice had been "delivered and received at the appropriate place by an authorized agent" notice of the assignment had been given. Id.
Here, genuine issues of material fact remain in dispute regarding the effectiveness and adequacy of the notice provided by Presidential to GAF. GAF presented evidence that Presidential sent the notice to a location and an individual other than those that GAF designated for receipt of such information. In addition, GAF presented evidence that Mr. Whitlock's receipt of the notice and execution of the acknowledgement were not part of his regular job duties and that he would not necessarily understand the significance of the notice or acknowledgement. Although Presidential presented evidence and argued that GAF had made some payments consistent with the assignment, there was conflicting evidence that the payments were not due to the assignment but were pursuant to other payment procedures that were being used.
Further, the trial court's decision to grant summary judgment appears to be based almost entirely on the fact that Mr. Whitlock's signature is on the acknowledgment portion of Stanley Freight's letter to GAF. The court indicated that it did not accept the waiver argument, but our review of the record leads us to conclude that Presidential did not overcome the affirmative defenses.
Accordingly, we reverse the final summary judgment and remand for further proceedings.
Reversed and remanded.
STRINGER, J., and GROSS, RAYMOND O., Associate Judge, Concur.