DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**EXPERT INSPECTIONS, LLC** d/b/a **ITEST**
d/b/a **MOLDEXPERT.COM** a/a/o **PAT BECKFORD,**
Appellant,

v.

**UNITED PROPERTY & CASUALTY INSURANCE COMPANY,**
Appellee.

No. 4D21-547

[January 5, 2022]

Appeal from the County Court for the Seventeenth Judicial Circuit, Broward County; Louis H. Schiff, Judge; L.T. Case Nos. CONO19-008142 and CACE20-0014553.

Chad A. Barr of Chad Barr Law, Altamonte Springs, for appellant.

Kimberly J. Fernandes of Kelley Kronenberg, P.A., Tallahassee, for appellee.

ARTAU, J.

Appellant Expert Inspections, LLC (the assignee), as the assignee of Pat Beckford (the insured), appeals from the trial court's entry of final summary judgment in favor of United Property & Casualty Insurance Company (the insurer), in an action stemming from the assignment of post-loss insurance benefits. We affirm on all issues and write to address the assignee's contention that the trial court erred in granting the insurer's motion for final summary judgment based on the insurer's pre-suit payment to both the assignee and the insured.

**Background**

In 2017, the insured's property sustained damage from Hurricane Irma resulting in a covered loss. To mitigate damage and comply with her obligations under her insurance policy, the insured retained the assignee to perform mold-related services.

As payment, the insured assigned her policy benefits pursuant to a limited and qualified assignment of benefits agreement ("AOB agreement"). In pertinent part, the policy provided: "We will pay you unless some other person is named in the policy or is legally entitled to receive payment." The AOB agreement, in turn, provided:

> 3. *[The insured] agrees to cooperate with [the assignee] to ensure that payments are made by any insurance carrier immediately* upon completion of work. [The insured] understands that [the assignee] is working for [the insured] and not [the insured]'s insurance company.

> 4. **Direction to Pay.** [The insured] hereby demands and authorizes any applicable insurance carrier(s) to pay [the assignee] solely and directly for the services provided, without the need to include [the insured] or any co-insured as a payee.

> 5. **Assignment of Insurance Claim Benefits.** [The insured] hereby assigns to [the assignee] any and all insurance rights, benefits, and proceeds which pertain to services rendered in relation to the above loss, under any applicable policy of insurance. *This assignment of rights, benefits and proceeds is limited* to the amount of [the assignee]'s invoice for services rendered in relation to the above claim and the right and ability to collect same directly from my insurer, including the right to file suit and to seek attorney's fees and court costs. Toward that end, [the insured] waves [sic] any homestead exemption, which might be applicable to such insurance funds. *Any and all other insurance rights, benefits, and proceeds shall continue to belong to the [insured].*

> . . . .

> 7. **Limited Power of Attorney.** *[The insured] hereby appoints [the assignee] as [the insured]'s attorney in fact to endorse and deposit any payments made by any source for services rendered by [the assignee] which may include [the insured]'s name as a co-payee.*

> . . . .

> 11. **Other.** *I (we) give authority to [the assignee] to endorse any checks with (my/our) name listed in the check.*

2

(italicized emphasis added).

On April 18, 2018, the assignee submitted a claim to the insurer. The assignee provided the insurer with a copy of the AOB agreement and an invoice for $1,995.00.

Subsequently, the assignee sent the insurer a final request for payment within ten days as part of its "last good faith effort to receive payment."

Within the requested ten-day period, the insurer issued a check for the invoice payable to both the assignee and the insured, mailing the check to the insured's home address. Approximately one year later, the assignee filed suit for breach of contract against the insurer.

In response, the insurer filed a motion to deposit the funds with the clerk of the court. The insurer asserted it had previously issued a check in full payment to both the insured and the assignee, but the check was never negotiated. Additionally, the insurer noted it had offered to re-issue the check in exchange for the assignee's dismissal of the lawsuit. Thus, the insurer requested "that the court deposit . . . the pre-suit payment, until the issues addressed herein are resolved." The trial court ultimately granted the motion.

Thereafter, the insurer filed its answer and affirmative defenses. The insurer argued that the assignee was not entitled to attorney's fees because the assignee was not "forced" to initiate litigation, and that the insured breached the policy's applicable portion stating: "If you and we fail to agree on the settlement regarding the loss, *prior to filing suit, you must notify us of your disagreement in writing.*" (emphasis added).

The parties filed competing motions for summary judgment. The insurer's motion contended the full amount was paid pre-suit, and that the assignee "never notified [insurer] in writing of any disagreement prior to filing suit . . . ." Thus, the insurer contended that it was entitled to summary judgment as a matter of law.

The assignee's motion maintained that because it notified the insurer of the AOB agreement—which contained instructions to issue payment solely to the assignee—the insurer was required to pay solely the assignee for services rendered in connection with the claim.

Based upon the assignee's acknowledgment that a check for full payment was issued and mailed well before the lawsuit was filed, the court granted the insurer's motion for final summary judgment and denied the

3

assignee's motion. Because no dispute existed as to the assignee's entitlement to the $1,995.00 amount, the court further found that the assignee was entitled to the funds in the court registry.

## Analysis

"The standard of review of an order granting summary judgment is de novo." *Jaffer v. Chase Home Fin., LLC,* 155 So. 3d 1199, 1201 (Fla. 4th DCA 2015) (quoting *Fla. Atl. Univ. Bd. of Trs. v. Lindsey,* 50 So. 3d 1205, 1206 (Fla. 4th DCA 2010)).

The assignee alleges a breach of the insurance contract because the insurer did not abide by the instructions listed in the AOB agreement. However, the insurer cannot breach an agreement to which it has no privity. *See, e.g., Espinosa v. Sparber, Shevin, Shapo, Rosen & Heilbronner,* 612 So. 2d 1378, 1379–80 (Fla. 1993) ("In a legal context, the term 'privity' is a word of art derived from the common law of contracts and used to describe the relationship of persons who are parties to a contract." (citing *Baskerville–Donovan Eng'rs, Inc. v. Pensacola Exec. House Condo. Ass'n,* 581 So. 2d 1301, 1303 (Fla. 1991))). While the AOB agreement grants the assignee the qualified right to enforce the insurance policy, it does not grant the assignee the right to enforce against the insurer terms from the AOB agreement that are extraneous to the insurance policy itself.

The dissent's reliance on *Building Materials Corp. of America v. Presidential Financial Corp.,* 972 So. 2d 1090, 1092 (Fla. 2d DCA 2008), is misplaced. *Building Materials* does not apply here because its holding is limited to its interpretation of section 679.4061, Florida Statutes (2018). Section 679.4061 was adopted from the Uniform Commercial Code. It provides that a debtor "may not discharge the obligation by paying the assignor" once a debtor is on notice of the assignment. § 679.4061(1), Fla. Stat. (2018). However, by the statute's own plain and unambiguous text, it applies only to "an account debtor on an account, chattel paper, or a payment intangible." *Id.* Therefore, it has no applicability to an insurance claim.

Bemoaning the misuse of the "oft-quoted maxim that 'the polestar of statutory construction is legislative intent,'" Florida Supreme Court Justice Lawson employed the "polestar" as a metaphor to explain that construing a "clear and unambiguous" statute "is like walking a marked path on a clear day—where looking up to ponder unseen stars makes no sense, and could send you stumbling off the marked path." *Schoeff v. R.J. Reynolds Tobacco Co.,* 232 So. 3d 294, 313 (Fla. 2017) (Lawson, J., dissenting in part).

The dissent's assertion that "[c]ontrary to the majority opinion's rhetoric, there is no caselaw limiting this legal principle to UCC cases[,]" illustrates Justice Lawson's metaphor. Rather than focusing on the clear and unambiguous text that limits the statute's application to certain debtors, the dissent is "looking up to ponder unseen stars" in search of caselaw to interpret what is clear on the face of the statute itself.

Moreover, section 679.4061(1) provides protection for "an account debtor on an account, chattel paper, or a payment intangible" when a debtor pays an assignee directly as it discharges the payor's obligation. When the check was tendered by the insurer, the Legislature had not provided any similar protection to an insurance company paying a claim to an assignee. Therefore, it was not unreasonable for the insurance company to make the check payable to both the insured and the assignee, particularly since the AOB agreement did not assign all of the insured's interest in the insurance policy to the assignee.

Contrary to the dissent's assertion that the assignee was entitled to all rights of the insured as "the assignor no longer has a right to enforce the interest because the assignee has obtained all 'rights to the thing assigned[,]'" quoting *Cont'l Cas. Co. v. Ryan Ins. E.*, 974 So. 2d 368, 376 (Fla. 2008) and *Price v. RLI Ins. Co.*, 914 So. 2d 1010, 1013–14 (Fla. 5th DCA 2005), the AOB agreement was a "limited" assignment. It provided that *"[a]ny and all other insurance rights, benefits, and proceeds shall continue to belong to the [insured]."* (emphasis added). Thus, the insurer was not entirely free to disregard its insured in paying the claim because the assignment was not unqualified. *See State Farm Fire & Cas. Co. v. Ray*, 556 So. 2d 811, 813 (Fla. 5th DCA 1990) (only "an unqualified assignment transfers to the assignee all the interest of the assignor under the assigned contract . . . .").

While the AOB agreement stated that there was no "need to include [the insured] or any co-insured as a payee[,]" and reflected a desire between the assignee and the insured for the check to be paid directly to the assignee, the AOB agreement clearly contemplated how the assignee and the insured would proceed if the check was made payable to both of them.

The AOB agreement included a limited power of attorney wherein the "[i]nsured hereby appoints [the assignee] as [the insured]'s attorney in fact to endorse and deposit any payments made by any source for services rendered by [the assignee] which may include [the insured]'s name as co-payee." In addition, the AOB agreement provided "*authority to [the assignee] to endorse any checks with (my/our) name listed in the check.*" (emphasis added).

5

The AOB agreement also included an enforceable provision obligating the insured to "cooperate" with the assignee "to ensure" that "payment" is "immediately" received from the insurer. This provision obligated the insured to promptly notify the assignee upon her receipt of payment from the insurer. After receiving payment, the insured was legally obligated to either promptly forward the check to the assignee or notify the insurer in writing of the insured's disagreement with the manner of payment as required by the insurance policy. The insured's failure to do either cannot be attributed to the insurer who was not a party to the AOB agreement and was not put on written notice by its insured of any disagreement regarding the manner of payment.

Lastly, while the assignee did mention section 627.7013, Florida Statutes (2018), in its statement of facts, it did not make an argument as to any significance that statute would have on why we should reverse the trial court's entry of summary judgment. Thus, we cannot consider any argument in support of reversal based on section 627.7031, Florida Statutes (2018), that was not argued in the appellate briefs. "It is a rather fundamental principle of appellate practice and procedure that matters not argued in the briefs may not be raised for the first time [later in the appeal]." *Ayer v. Bush*, 775 So. 2d 368, 370 (Fla. 4th DCA 2000). Thus, we do not address this issue because it was abandoned. *See Coleman v. Allen*, 320 So. 2d 864, 865 (Fla. 1st DCA 1975) (assignment of error which was not argued in appellant's brief was considered abandoned).

### Conclusion

Accordingly, we affirm because the trial court properly granted final summary judgment in favor of the insurer.

*Affirmed.*

KLINGENSMITH, J., concurs.
FORST, J., dissents with opinion.

FORST, J., dissenting.

I respectfully dissent as to the majority's contention that the inclusion of the insured as a payee (and the only party to whom the funds were mailed) violates neither the policy, the assignment, nor any statutory provision.

As noted by the majority, Pat Beckford ("the insured") assigned appellant Expert Inspections, LLC ("the assignee") her policy benefits

pursuant to a "Mold Inspection & Sampling Agreement, Assignment of Benefits & Contract for Services" ("AOB agreement"). The underlying insurance policy provided: "We will pay you unless some other person is named in the policy or is legally entitled to receive payment."

On April 18, 2018, after performing certain mold-related services, the assignee submitted a claim to the insurer via email. The email included a copy of the AOB agreement and an invoice for $1,995.00 in services rendered. As part of the claim, the insurer stated it "look[ed] forward to hearing from [the insurer] within the next 14 days in compliance with Fla. Stat. 627.70131." The insurer admitted it received the claim. However, nothing in the record indicates the insurer responded or acknowledged the assignee's claim at that time, or that the insured tendered a separate and/or competing claim.

Thereafter, on July 18, 2019—91 days after the assignee provided the insurer with the AOB agreement and the $1,995.00 invoice for services rendered—the assignee sent the insurer an additional email. The assignee stated it had "been sending [the insurer] emails and phone calls for over 90 plus days," and requested payment within ten days as part of its "last good faith effort to receive payment." The insurer issued payment within this ten-day period, albeit via a check payable to both the assignee and the insured at the insured's home address. The insurer otherwise failed to respond to the assignee's July 18 email.

"Under Florida law, an insured may assign his [or her] rights to benefits under a contract of insurance." *Schuster v. Blue Cross & Blue Shield of Fla., Inc.*, 843 So. 2d 909, 911 (Fla. 4th DCA 2003). "[P]ost-loss insurance claims are freely assignable without the consent of the insurer." *Bioscience W., Inc., v. Gulfstream Prop. & Cas. Ins. Co.*, 185 So. 3d 638, 643 (Fla. 2d DCA 2016).

Once an assignor transfers his or her interest, "the assignor no longer has a right to enforce the interest because the assignee has obtained all 'rights to the thing assigned.'" *Cont'l Cas. Co. v. Ryan Inc. E.*, 974 So. 2d 368, 376 (Fla. 2008) (quoting *Price v. RLI Ins. Co.*, 914 So. 2d 1010, 1013–14 (Fla. 5th DCA 2005)). The effect of an assignment of benefits "is to place the insured's cause of action for such benefits in the provider." *Schuster*, 843 So. 2d at 911. Further, "[i]t is well established under Florida law that a debtor who receives actual notice of the assignment of . . . an obligation to pay may be held liable to the assignee if the debtor later pays the assigned debt to the assignor rather than the assignee." *Bldg. Materials Corp. of Am. v. Presidential Fin. Corp.*, 972 So. 2d 1090, 1092 (Fla. 2d DCA

2008). Contrary to the majority opinion's rhetoric, there is no caselaw limiting this legal principle to UCC cases.

Here, the insurance policy provided: "[w]e will pay you unless some other person is named in the policy *or is legally entitled to receive payment.*" (emphasis added). Thus, because an assignee "stands in the shoes of his assignor," *Dove v. McCormick*, 698 So. 2d 585, 589 (Fla. 5th DCA 1997) (quoting *Cadle Co. II, Inc. v. Stamm*, 633 So. 2d 45, 46 (Fla. 1st DCA 1994)), it was *the assignee* that was "legally entitled" to receive payment under the policy. The assignment's limited nature simply does not change the fact that the assignee stood in the shoes of the insured for purposes of receiving the $1,995.00 invoice amount.

Moreover, the assignee had placed the insurer on notice of this arrangement. The AOB agreement provided that the insured "hereby demands and authorizes any applicable insurance carrier(s) to pay [the assignee] *solely and directly for the services provided*, without the need to include [the insured] or any co-insured as a payee." (emphasis added). This AOB agreement was timely provided to the insurer along with the insurance claim and invoice for services rendered.

Although neither party disputes that the insurer ultimately mailed a check for the $1,995.00 amount, the insurer sent that payment to *the wrong party*. Under Florida law, the assignee could not endorse the check mailed by the insurer without the signature of both the assignee and the insured. *See* § 673.1101(4), Fla. Stat (2018) ("If an instrument is payable to two or more persons not alternatively, it is payable to all of them and may be negotiated, discharged, or enforced only by all of them."). However, even accounting for the AOB agreement's "other" provision—allowing the assignee to endorse checks in which the insured's name was included as a payee—the record demonstrates that the check was sent to the *wrong address*. Therefore, the insurer not only failed to pay the assignee "solely and directly," but essentially failed to pay the assignee *at all*. While perhaps the insured was partly culpable in failing to remit the check to the assignee, the assignee brought suit against the insurer, and the insured was not involved in the litigation.

Moreover, beyond the assignee's entitlement to payment and the plain language of the AOB agreement, the insurer ignored statutory law. On April 18, 2018, the assignee placed the insurer on notice of its claim and that it was legally entitled to receive payment. Under section 627.70131(1)(a), Florida Statutes (2018), the insurer was *required* to acknowledge receipt of the assignee's benefits claim within 14 days, unless payment was made within that time period. The April 18, 2018 claim was

8

never acknowledged beyond the indirect response of the check being mailed (to the insured, not the assignee) on July 25, 2018, well beyond 14 days. This was also beyond the 90 days within which, pursuant to section 627.70131(5)(a), Florida Statutes (2018), the insurer was *required* to issue or deny payment following receipt of an insurance claim.

The insurer does not dispute that the insured incurred a loss covered by her home insurance policy with the insurer. Nor does it dispute the cost of the repairs. As the assignee timely put the insurer on notice of its claim and its standing—under the policy and the AOB agreement—to submit a claim on behalf of the insured, the insurer had a duty to timely acknowledge the claim and direct payment to the assignee (or at least notice of where payment had been directed). It did neither, compelling the assignee to file suit and incur legal fees and costs. As the assignee's actions were within the terms of the policy and the AOB agreement, I would reverse the trial court's order in favor of the insurer and remand for the trial court to grant the assignee's motion for summary judgment and enter judgment in that party's favor.

*     *     *

***Not final until disposition of timely filed motion for rehearing.***